## MOSES A. T. HART vs. WILLIAM H. BRIERLEY.

Bristol.    October 24, 1905. — December 7, 1905.

Present: KNOWLTON, C. J., LATHROP, LORING, BRALEY, & SHELDON, JJ.

*Sales of Merchandise in Bulk.    Fraud,* As against creditors.    *Practice, Civil,* Exceptions, Verdict.    *Evidence,* Admissions.*  Damages.    Conversion.*

Biscuits and crackers put up in boxes or barrels for the wholesale market were here assumed to be merchandise within the meaning of St. 1903, c. 415, relating to sales of merchandise in bulk.

To determine whether a sale of merchandise in bulk is within the prohibition of St. 1903, c. 415, it is necessary to inquire whether the sale was made in the ordinary way in which a merchant owing debts conducts his business, or whether the merchant resorted to an unusual method in disposing of his property in order to get the proceeds for his own use leaving his creditors unpaid.

A sale at wholesale by a biscuit company of all its stock on hand, consisting of biscuits and crackers packed in boxes or barrels, to a single buyer, is not voidable as in violation of St. 1903, c. 415, relating to sales of merchandise in bulk, if made in the regular and ordinary course of the company's business; and so it is of a contract made by such a company in the regular and ordinary course of its business to sell to one person a quantity of its product already manufactured and the entire product of its bakery for a period of at least three months following.

Where it is contended that a sale of goods is fraudulent as against creditors under St. 13 Eliz. c. 5, if it is shown that the sale was effected according to the usual course of the debtor's affairs, this is evidence of its validity.

An exception to an erroneous instruction on a point which the findings of the jury on other points have made immaterial cannot be sustained.

No exception lies to the exclusion of evidence of a fact which already has been shown or admitted.

No exception lies to the exclusion of evidence, which, although admissible for the limited purpose of contradicting a witness, was not offered for this purpose, but for another purpose for which it was not admissible.

On the question whether a conveyance was fraudulent as against the creditors of the grantor, declarations of the grantor made after the conveyance when the grantee was not present are not admissible to impeach the grantee's title.

It is within the discretionary power of a presiding judge to submit special questions to the jury or to inquire of them orally as to the grounds on which they based a general verdict or whether they have determined certain issues.

In assessing damages after a general verdict for the plaintiff in an action of tort for a conversion, the plaintiff is entitled to the fair market value of the goods at the time of their conversion, and the defendant cannot show that the plaintiff obtained the goods at less than the market price, not being entitled to the benefit of the plaintiff's bargain.

In assessing damages after a general verdict for the plaintiff in an action of tort for a conversion, although the jury has made a special finding that certain goods

were not in existence at the time of the conversion, this does not preclude the plaintiff from showing the contrary, no judgment having been entered upon the general verdict.

TORT, against a deputy sheriff, for the alleged conversion of certain biscuits and crackers in cases and barrels attached by the defendant on September 14 and 18, 1903, in the possession of the plaintiff as the property of the Favorite Biscuit Company and alleged by the plaintiff to have been purchased by him from that company. Writ dated October 17, 1903.

At the trial in the Superior Court before *Harris,* J. the defendant relied on the defence that the sale to the plaintiff was voidable under St. 1903, c. 415, relating to sales of merchandise in bulk, and also was voidable at common law as in fraud of creditors.

The plaintiff purchased the goods under the following contract:

"Agreement entered into this 15th day of June, 1903, between Moses A. T. Hart of Fall River, Mass., party of the first part, and the Favorite Biscuit Co., a corporation duly organized, of the second part.

"The party of the second part agrees herein to sell all its manufactured product, however obtained or made, to the party of the first part at a discount of 25% plus 2% off the list selling price; all of said goods are to be stored subject to the order of the party of the first part.

."It is agreed by said parties that at no time shall the amount of goods outstanding, undisposed of, exceed in value the sum of $1,500. And the party of the second part to sell and dispose of to the trade said goods, and said party of the first part agrees to retransfer or reconvey them to said party of the second part as needed, at a discount of 25% off list price, being as appears a commission of 2% profit to said party of the first part; said party of the first part agrees to pay $52 a year for rent of a storage house, for said goods. Said party of the second part agrees to have all said goods conveniently packed in cases, boxes or barrels; said party of the first part is privileged to enter the premises of storage or manufactory at any time. It is agreed between said parties that all goods shall be paid for when received at store house, and paid for when taken from store house. All shortage in weight or unsalable goods shall be made good by

the party of the second part. It is further agreed between the parties hereto, that either party may withdraw from above agreement at the expiration of three months from the date hereof by giving eight days' notice thereof and the party of the second part in such case agrees to take all stock or product that the party of the first part may have on hand before the expiration of said eight days' notice, and pay for same at time of taking.

" Witness our hands and seals this fifteenth day of June, 1903."

Here followed the signatures and seals of the parties and the signature of a witness.

The judge submitted to the jury certain questions, which are referred to in the opinion. He also inquired of the jury whether they had considered certain other questions, and on the foreman answering in the affirmative asked them for their findings upon those questions. The judge directed the clerk to make out a general verdict for the plaintiff which was returned by the jury, and the defendant alleged exceptions. The case was sent to an assessor who made a report. The defendant moved to recommit the report to the assessor. This motion was denied by the judge, and the defendant appealed.

*A. S. Phillips,* for the defendant.

*M. Druce,* for the plaintiff.

BRALEY, J. The plaintiff's title to the chattels alleged to have been converted is derived under a sale from a corporation described as the Favorite Biscuit Company. By way of defence this sale is alleged to have been made by the vendor either in violation of the St. 1903, c. 415, or for the purpose of defrauding its creditors, and hence to be voidable by them at common law.

In *Squire* v. *Tellier,* 185 Mass. 18, although this statute was held to be constitutional, the scope of its application to mercantile transactions similar to those found in this case was neither involved nor determined.

The company was engaged in making biscuits and crackers, which upon being packed in boxes or barrels were sold only at wholesale. Presumably its business was managed in the ordinary way, for although it is not stated what portion of the company's output was taken daily by customers, or how much remained

unsold, yet from the nature of the product such an enterprise to be conducted successfully required frequent sales, for if not used before they became stale the biscuits and crackers would become unsalable and worthless. It may be conceded that bread made and put up for the market in this form is merchandise within the meaning of the act, and may comprise the whole or the principal part of a merchant's stock in trade, but the sale prohibited without notice to the vendor's creditors by St. 1903, c. 415, is a disposal of the stock in bulk, or as a whole, leaving them unpaid. Unless the transaction is outside of the ordinary course adopted by the trader for the disposal of the commodity in which he deals, it is not made unlawful. *Squire* v. *Tellier*, *ubi supra.*

Where a going mercantile business is so conducted that to be profitable large quantities of goods must be sold to different customers, even to the extent of exhausting the entire stock which may be on hand at any stated time, such a sale is not voidable although all the stock in the seller's possession at the time may be delivered to a single buyer.

The statutory test is whether the sale was made in the usual way in which a merchant owing debts conducts his business, or whether he takes an unusual method of disposing of his property in order to get the money for his own use, leaving his creditors unpaid. This inquiry is essentially an issue of fact depending upon the nature of the seller's business, his ordinary method of making sales, and his indebtedness. A sale of his entire stock by one trader might not be uncommon, while such a sale if made by another would be extraordinary and within the statute.

The written executory contract between the plaintiff and the company by which it sold to him a quantity of its product already manufactured, and the entire product of its bakery for a period of at least three months following, must be read in connection with the commercial system under which the company necessarily transacted its business, as the parties incorporated this condition of things into their contract. *Knight* v. *New England Worsted Co.* 2 Cush. 271, 283.

If the company lawfully could have sold its merchandise as manufactured at wholesale to more than one customer without violating the statute, this agreement to take and pay for its

entire product does not become voidable at the election of exist-
ing creditors because by reason of its provisions such sales are
made continuously to a single purchaser.

In substance the instructions to the jury defined the scope of
this part of the statute in accordance with what we have said,
and were sufficiently favorable to the defendant.

Under these instructions the jury having found specially that
the property was sold and delivered in the regular and ordinary
course of the company's business, the plaintiff's title became
unimpeachable, while if they had found otherwise it would have
been open to attack as being fraudulent and void by force of
the statute.

This special finding goes far to dispose of the defendant's
further contention that the agreement was fraudulent as against
creditors under the provisions of St. 13 Eliz. c. 5.

The conduct of a vendor or grantor when a conspiracy to
defraud is charged becomes material in proof of a fraudulent
purpose. A sudden sale of his entire stock in trade by a retail
merchant, who at the time is insolvent or is in contemplation of
insolvency, by which he realizes the value of his goods for his
own gain, is strongly presumptive of a deliberate intention to
cheat his creditors.

But where the sale is shown to have been effected according
to the usual course of the debtor's affairs, that is evidence tend-
ing to show its validity. *Killam* v. *Peirce*, 153 Mass. 502.
*Leighton* v. *Morrill*, 159 Mass. 271.

It is not therefore surprising that, in response to further in-
structions, accompanied by a question to them after they had
returned into court, and before the general verdict was recorded,
the jury stated that the allegation in the defendant's answer of
a conspiracy between the plaintiff and the company to defraud
its creditors was not proved.

Under the second and third questions * the jury found that the

---

* The questions and answers referred to were as follows: "2. Was the
sale and delivery of the goods on hand on June 15, 1903, made in the ordi-
nary course of trade? The jury answer, Yes. 3. Did the Favorite Biscuit
Company at the time of the sale and delivery to the plaintiff of the first lot
of goods on June 15, 1903, have other creditors whose claims were due and
owing? The jury answer, No."

sales and deliveries of the goods were not of the kind prohibited by the statute, and as the plaintiff further was found to be a purchaser for value and in good faith from the vendor, who lawfully could sell, there being no violation of the statute and no fraud at common law, no creditors, whatever their number, had any remedy, and the eleventh instruction to which the defendant excepted, though erroneous in law, becomes immaterial. *Gordon* v. *Clapp*, 113 Mass. 335.　*Carroll* v. *Hayward*, 124 Mass. 120.

The argument now advanced that the contract was consummated with the intent to defraud future creditors is not open under the answer, but if it was, there is no evidence upon which such a defence could be founded within the general rule of *Winchester* v. *Charter*, 12 Allen, 606, 610, 611.　To sustain this defence proof must be advanced that the company designed to contract debts which it did not intend to pay, and which it had reasonable ground at the time to believe it might not be able to pay.

In connection with this branch of the case is the exception relating to the exclusion of the record of judgments obtained by two of the company's creditors.　This exclusion affords no just ground of exception, and the defendant was not prejudiced, as the evidence was offered after an agreement of the parties had been introduced establishing the amount of the claims of the judgment creditors and the fact that they were in existence at the time shown by the record of judgments itself.

The defendant also offered the petition and schedules in bankruptcy of the company, and though excluded they were admissible for the limited purpose of contradicting the statement of its treasurer, who was a witness for the plaintiff, as to its indebtedness.

But the offer of proof at the trial made no reference to this reason for its admission, but was limited to the express purpose of showing debts due from the company before the date of the contract, and the time when these debts were contracted.　It is, however, well settled that declarations made by the grantor after an alleged fraudulent conveyance, when the grantee is not present, are not admissible for the purpose of impeaching the title of the latter.　*Aldrich* v. *Earle*, 13 Gray, 578.　*Holbrook* v. *Holbrook*, 113 Mass. 74, 76.

A further exception is taken to the submission of special questions to the jury as well as to inquiries orally addressed to them as to the grounds upon which they based their general verdict, or inquiring if they had determined certain issues involved in the case. But it was within the discretionary power of the trial judge to submit or ask any or all of these questions calling for special findings, and as this discretion does not appear to have been improperly exercised no ground of exception is shown. *Spoor* v. *Spooner*, 12 Met. 281. *Lawler* v. *Earle*, 5 Allen, 22. *Graves* v. *Washington Ins. Co.* 12 Allen, 391. *Spurr* v. *Shelburne*, 131 Mass. 429. *Boston Dairy Co.* v. *Mulliken*, 175 Mass. 447.

A general verdict having been returned in favor of the plaintiff, an assessor was appointed to assess damages. Upon the coming in of his report the defendant moved that it be recommitted for the correction of erroneous rulings and refusals to rule, and, the motion being denied and the report confirmed, these questions are now before us.

As the issue of the defendant's liability had been settled previously, the validity of the original agreement was not before the assessor. By the ordinary rule the measure of damages would be the fair market value of the goods at the date of their conversion, and evidence that the plaintiff under the contract could buy them for less than the market price was not competent to reduce the amount of the defendant's liability as he was not entitled to the benefit of the plaintiff's bargain. *Lorain Steel Co.* v. *Norfolk & Bristol Street Railway*, 187 Mass. 500, 506.

The plaintiff also was allowed damages for the conversion of six hundred pounds of crackers, which he alleged had been manufactured before but were sold to him on the date of the contract, and it is the contention of the defendant that because the jury specifically found that none of the goods converted were in existence when the contract was made there can be no recovery for this item. But no judgment has been entered upon the general verdict, and until this is done there is no estoppel preventing the plaintiff from showing such conversion. *Burlen* v. *Shannon*, 99 Mass. 200, 203. *Hawks* v. *Truesdell*, 99 Mass. 557. *O'Connell* v. *O'Leary*, 151 Mass. 83, 84.

The exceptions, therefore, must be overruled, and the order accepting and confirming the assessor's report affirmed.

*So ordered.*