NEW ENGLAND AND SAVANNAH STEAMSHIP COMPANY *vs.*
COMMONWEALTH.

BOSTON AND GLOUCESTER STEAMBOAT COMPANY *vs.* SAME.

Suffolk.   December 4, 5, 1906. — May 15, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Tax.   Corporation,* Domestic, Taxation.   *Ship.   Statute,* Construction.   *Words,*
"Merchandise."

Steamships owned by a domestic corporation and used by it in the coastwise transportation of freight and passengers between domestic ports are merchandise within the meaning of St. 1903, c. 437, § 74, relative to the taxation of the corporate franchises of domestic corporations.

The word "merchandise" in St. 1903, c. 437, § 74, so far at least as respects chattels, must be construed as including tangible property which may be the subject of sale.

Review by HAMMOND, J., of the history of the legislation in this Commonwealth upon the subject of the taxation of corporations.

TWO PETITIONS filed respectively June 6, 1906, and April 13, 1906, in the Supreme Judicial Court for the county of Suffolk, brought under St. 1903, c. 437, § 84, each for the abatement of an excise tax assessed upon the petitioner under § 74 of that statute.

The cases were heard on petitions and answers by *Sheldon,* J. and by him reserved for the consideration and determination of the full court.   The facts appear in the opinion.

*A. H. Russell,* for the petitioners.

*D. Malone,* Attorney General, & *F. T. Field,* Assistant Attorney General, for the Commonwealth.

HAMMOND, J. These petitions are brought under St. 1903, c. 437, § 84, each for the abatement of an excise·tax assessed upon the petitioner under § 74 of that statute. Each petitioner is a domestic corporation owning steamships and, as we understand, using them in the coastwise transportation of freight and passengers between domestic ports. In each case is raised the question whether such steamships are merchandise within the meaning of that term as used in the last named section. If the answer be in the affirmative, then each petition must be dismissed.

In· considering this question it is useful to look over briefly the history of the legislation upon the subject of the taxation of corporations, and to note the circumstances under which this statute was passed. It is to be observed also that the tax in question is not a property tax but is a franchise tax. It is a tax upon the right of the corporation to exist. Under the early tax acts a domestic corporation was assessed for its real estate only, while its personal property was reached for taxation only through an assessment upon the shareholders based upon the market value of the shares. *Salem Iron Foundry* v. *Danvers,* 10 Mass. 514. This was liable to result in double taxation so far as respected the value of the real estate. This system was considerably modified by St. 1832, c. 158, which provided that machinery belonging to a corporation should be assessed in the place where the machinery was situated, and that in assessing the shares of a manufacturing corporation there should "first be deducted from the value thereof the value of the machinery and real estate belonging to such corporation otherwise specifically taxed." As thus modified the system with some changes not here material stood for many years. Rev. Sts. c. 7, § 10. Gen. Sts. c. 11, § 12. *Worcester* v. *Board of Appeal,* 184 Mass. 460.

But for obvious reasons this method of reaching for taxation the personal property of domestic corporations, especially that part of it whose value was·represented by shares held by shareholders residing out of the Commonwealth, was·defective; and during the civil war, public attention having been called more sharply to the question of taxation, an attempt was made by St. 1863, c. 236, to tax the interest of non-resident stockholders. This statute was declared unconstitutional. *Oliver* v. *Washing-*

*ton Mills*, 11 Allen, 268.   But before this decision was announced the statute had been repealed, and by St. 1864, c. 208, a valid franchise tax had been substituted.   *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298.

This statute marks the change from a property tax to a franchise tax.   Roughly speaking, the statute provided for a franchise tax upon every domestic corporation of one and one tenth per cent of the market value of all the shares of its stock less certain deductions.   In the case of certain corporations including those like these petitioners, the only deductions to be made were the value of the real estate and machinery.   These were to be locally assessed where situated.   The shareholders were not to be assessed for their stock.   By St. 1865, c. 283, the rate was changed from one and one tenth per cent to the average tax rate of all the cities and towns.   The system thus established by these two statutes was substantially continued down to the enactment of St. 1903, c. 437, under which these cases arise. Pub. Sts. c. 13, §§ 38–41.   R. L. c. 14, §§ 37–42.   As before stated, under this system the real estate and machinery were assessed to the corporation where the property was situated. There was no tax upon the personal property as such, either to the corporation or the individual shareholders, nor were the shareholders assessed for these shares, but instead thereof there was a franchise tax upon the corporation based upon the market value of its shares less the value of its real estate and machinery.

The state of the law at that time as to the taxation of foreign corporations will be hereinafter considered.

In 1902, the Legislature, desiring to have more light upon the general condition of corporations for the purpose of ascertaining whether it was advisable to make any changes in the law affecting them, passed a statute providing for the appointment by the Governor of a committee of three persons to investigate and report to the next legislature.   St. 1902, c. 335.   This committee were " to examine and consider the laws of the Commonwealth, in relation to the formation, taxation and conduct of all corporations, foreign or domestic, except municipal, banking and public service corporations," and to " compare the said laws, and their effect upon trade, commerce and manufactures, with the corre-

sponding laws, and their effect, in other States and countries, especially in respect to matters of taxation." The committee were " to determine what legislation, if any, is necessary to make the relations existing between the Commonwealth and said corporations more advantageous to the Commonwealth and to the public interest." They were to report to the next Legislature, the report to be accompanied by such bills as were necessary to carry out their recommendations.

The committee in due time made a very elaborate report, and the report was accompanied by a bill. These were referred to the joint legislative committee of 1903 on the revision of the laws, who reported the bill which was finally enacted as St. 1903, c. 437, the statute now under consideration. For convenience the committee appointed under the St. of 1902 will be called the committee, while the legislative committee of 1903 will be called the joint committee.

It is plain from the report of the committee that they construed the statute as limiting their investigations to such corporations as have a capital stock and are established for the purpose of carrying on business for profit under the general and special laws of the Commonwealth, excepting those named in the second section of the act and insurance companies. Upon the matter of taxation, which is very carefully considered, the committee, after saying (p. 31) that " There is substantial agreement in the conclusion that the existing law governing the taxation of corporations, particularly manufacturing and trading corporations, is so burdensome upon certain classes of these corporations that they are in many cases compelled to organize under the laws of other States," proceed to a brief historical review of the taxation of corporations, both domestic and foreign, and to a statement of the present condition of the law on that subject. They recognize (p. 35) that " There is no express provision for the taxation of foreign corporations, but they are taxed in the same manner as individuals "; that (p. 36), " as a foreign corporation is legally a non-resident, and as the situs of intangible property follows the residence of the owner," a property tax can be laid only upon " its tangible property within the Commonwealth "; and further, that " The practical effect of this is to limit the taxation of foreign corporations to their real estate, machinery and mer-

chandise, which by the terms of section 23 [meaning R. L. c. 12, § 23], are expressly made taxable to non-residents. In other words, foreign corporations are taxed as individual residents of the Commonwealth, except that they escape taxation on their money, credits and other intangible property, and also on their tangible property without the Commonwealth." This statement of the law as then existing was correct. *Blackstone Manuf. Co.* v. *Blackstone,* 13 Gray, 488. *Leonard* v. *New Bedford,* 16 Gray, 292. *Boston Loan Co.* v. *Boston,* 137 Mass. 332. *Boston Investment Co.* v. *Boston,* 158 Mass. 461. *New York Biscuit Co.* v. *Cambridge,* 161 Mass. 326.

After an exhaustive inquiry into the tax laws, with illustrations as to their effect, the committee state (p. 58) that they deem it " unwise to propose any change in the machinery of the existing law [as to domestic corporations]. . . . The change in the substance of the law, as recommended by the committee, is embodied in the draft of the proposed act accompanying this report. It leaves the general theory of the existing law unchanged, but it provides relief for" certain classes of corporations. This relief is furnished by providing (p. 59) that from the market value of the shares there shall be deducted not only the value of the " real estate and machinery within the Commonwealth subject to local taxation," but also the value of "securities which if owned by a natural person within the Commonwealth would not be liable to taxation ; also the value as found by the tax commissioner of its property situated in another State or country and subject to taxation therein excepting securities which, if owned by a natural person resident in this Commonwealth, would be liable to taxation." It is unnecessary to recite further the details of this report. The recommendations of the committee are embodied in § 72 of the bill appended to their report (now § 71 of St. 1903, c. 437). That section provided among other things that " every foreign corporation which is subject to the provisions of this act shall be subject to taxation upon all real estate, machinery and merchandise owned by it and situated in this Commonwealth by the city or town in which such property is situated." In view of the language above quoted from their report, and of the whole tenor of their report, we can have no doubt that the

committee used the word "merchandise" in this connection as synonymous at least with tangible property which could be sold.

With reference to domestic corporations the bill followed the recommendations of the committee as to the deductions to be made from the market value, and provided in § 74 (now § 74 of the St. of 1903) that this residue should be regarded as the value of the corporate franchise upon which the franchise tax should be assessed, provided, however, that the total amount of tax paid by the corporation in any year upon its property locally taxed in this Commonwealth and upon the value of its corporate franchise should amount to not less than one tenth of one per cent of the true market value of its capital stock. It will be seen that while the minimum limit of the franchise tax was fixed, there was no maximum limit other than that which would arise from multiplying the value of the corporate franchise as above obtained by the average tax rate of all the cities and towns as provided in this section.

The bill reported by the joint committee, however, inserted the following words in this section : " The said tax upon the value of the corporate franchise, after making the deductions provided for in section seventy-two, shall not exceed a tax levied at the rate aforesaid upon an amount, less said deductions, twenty per centum in excess of the value, as found by the tax commissioner, of the real estate, machinery, merchandise, and securities which, if owned by a natural person resident in this Commonwealth, would not be liable to taxation." It will be observed that these words do not increase the franchise tax as recommended by the original bill, but simply diminish it in certain cases.

It is argued by the petitioners that the word " merchandise " in the usual and ordinary acceptation of the term does not properly or naturally describe articles kept for use and not for sale, and the remark in the Century dictionary that "real property, ships, money, stocks and bonds are not merchandise" is cited on their brief; and the recent case of *Gallus* v. *Elmer*, 193 Mass. 106, is cited, in which this court gave a limited meaning to the term. And cases from courts of other jurisdictions have been cited along the same line. A word however may be used in different senses, and in any case of doubt the context throws much light. Its meaning is to be gathered from the context and purpose of the act.

Ships and vessels always have been the subject of taxation in this Commonwealth as personal property.  St. 1780, c. 43, and the subsequent annual tax acts.  St. 1811, c. 78 (an act to establish the ratable estate within the Commonwealth).  Rev. Sts. c. 7, § 4.  Gen. Sts. c. 11, § 4.  Pub. Sts. c. 11, § 4.  R. L. c. 12, § 4.  An exception has been made ever since St. 1881, c. 284, however, in the case of vessels engaged in the foreign carrying trade.  As to them not the vessel, but only its net yearly income, is taxed.  St. 1881, c. 284.  Pub. Sts. c. 11, § 8.  R. L. c. 12, § 7.  It is to be also noted that the language of Gen. Sts. c. 11, § 12, cl. 1, is as follows : " All goods, wares, merchandise and other stock in trade, (except ships or vessels owned by a copartnership,) . . . shall be taxed in those places where the owners hire or occupy manufactories " etc. ; and this language has been continued in the subsequent revisions.  Pub. Sts. c. 11, § 20.  R. L. c. 12, § 23.

In *Tisdale* v. *Harris*, 20 Pick. 9, 13, this court said that " the words ' goods ' and ' merchandise ' are both of very large signification. . . . The word ' merchandise ' also, including in general objects of traffic and commerce, is broad enough to include stocks or shares in incorporated companies."  And in *Baldwin* v. *Williams*, 3 Met. 365, 367, " the words of the statute [of frauds] ' goods ' and ' merchandise ' are sufficiently comprehensive to include promissory notes of hand.  The word ' goods ' is a word of large signification ; and so is the word ' merchandise.' *Merx est quicquid vendi potest.*"

The question as to the construction of the statute is close and difficult, but in view of the history of our law as to corporate taxation, the language of the report of the committee, the fact that upon a contrary construction valuable property would escape taxation, the word " merchandise, " so far at least as respects chattels, must be construed as including tangible property which may be the subject of sale.  A steamship is such a chattel, and we think that it is not exempted by the fact that the owner uses it in the manner described in the petition.  Nor can we see that the form of the returns which the corporations are required to make is fatal to this view.  In each case the entry must be

*Petition dismissed.*