## J. C. MORELOCK *v.* E. A. HAIL *et al.*

### (*Nashville.*   December Term, 1917.)

**EXECUTORS AND ADMINISTRATORS. Payment of claims. Construction of will. "Goods". "Merchandise."**

Where a lawyer's will provided that all accounts for goods or merchandise, and all notes for borrowed money executed by him, were to be paid within sixty days after his death out of his insurance money, a charge for stenographic services, rendered in attending the trials of lawsuits, making notes of the proceedings, and furnishing typewritten transcripts, was not so payable, the portion of the account for making notes of court proceedings being neither "goods" nor "merchandise,' but a debt for services, while the transcripts were not included in such terms, having no intrinsic or market value, and not being generally articles of barter or trade.

Cases cited and approved: In re The Conqueror, 166 U. S., 114; Boston & Gloucester Steamboat Co. v. Commonwealth, 195 Mass., 385; In re Watson, 17 S. D., 486; Gibbs v. Usher, 10 Fed. Cas., 303.

---

### FROM DAVIDSON

---

Appeal from the Chancery Court of Davidson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals, from the Supreme Court.—JOHN ALLISON, Chancellor.

J. C. MORELOCK and JAS. W. MCCLURE, for plaintiff.

WALTER STOKES, for defendant.

MR. JUSTICE FENTRESS delivered the opinion of the Court.

The bill of complaint alleges that Harry S. Stokes, deceased, a Nashville lawyer, was indebted to the complainant in the sum of $3,196.55 for stenographic services, rendered in attending the trials of lawsuits and making notes of the proceedings and furnishing typewritten transcripts of same.

The bill states that Stokes had effected polices of insurance upon his life, payable to his estate, for more than $90,000, also that he died testate, and that the proceeds of the policies were in the hands of the defendants, his executor and executrix, the latter the widow of the decedant, and that by the terms of the codicil to the will, the testator provided for the payment of complainant's debt out of this insurance money.

It is averred that the estate of the deceased is hopelessly insolvent, and that the executor and executrix have refused to pay complainant's claim out of the aforesaid fund.

The paragraph of the codicil relied upon is as follows:

"All accounts for goods or merchandise and all notes, for borrowed money, executed by me, are to be paid within sixty days after my death, and for these such items I wish payment made out of my insurance money, since I do not wish people who have

Morelock v. Hail.

risked me to be kept out of their money longer than sixty days.''

Complainant insists that his debt is comprehended in the words "goods or merchandise.''

The defendants demurred to the bill, and their demurrer was overruled, and they appealed to the court of civil appeals. That court was of the opinion that the decree was erroneous in finding complainant's debt was covered by the words ''goods or merchandise,'' and reversed the chancellor. A petition for *certiorari* has been filed, in this court, in which it is insisted the decree of the chancellor is correct, and that of the court of civil appeals is erroneous.

We are of the opinion that the court of civil appeals was correct, and the demurrer to the bill should have been sustained.

Bouvier defines goods as follows:

"Goods. In contracts. The term 'goods' is not so wide as chattels, for it applies to inanimate objects, and does not include animals or chattels real, as a lease for years of house or land, which chattels does include. Goods will not include fixtures; a subscription for stock; or teams and wagons, notes and accounts due; in a more limited sense goods is used for articles of merchandise. It has been held in Massachusetts that promissory notes were within the term 'goods' in the statute of frauds; so stock or shares of an incorporated company; so, in some cases, bank notes and coin. The word 'goods' is

always used to designate wares, commodities, and personal chattels; the word 'effects' is the equivalent of the word 'movable.''

"In wills. Goods is *nomen generalissimum,* and, if there is nothing to limit, will comprehend all of the estate of the testator, as stocks, bonds, notes, money, plate, furniture, etc. But in general it will be limited by the context of the will.''

This lexicographer also defines merchandise as follows:

"A term including all those things which merchants sell, whether wholesale or retail; as dry goods, hardware, groceries, drugs, etc. It is usually applied to personal chattels only and to those which are not required for food or immediate support; but such as remain after having been used, or which are used only by a slow consumption.''

"It may be, and often is, used as the synonym of 'goods,' 'wares,' and 'commodities.' If used in an insurance policy to describe the goods of a merchant, it may very properly be limited to goods for sale. If used for the same purpose to describe the goods of a painter, it may be held to cover property intended for use, and not for sale.

"Mere evidences of value, as bank bills, are not merchandise. The fact that a thing is sometimes bought and sold does not make it merchandise.

"'Goods, wares, merchandise,' has been held to embrace animate, as well as inanimate, property, as oxen, or horses. Merchandise may include a curricle;

---

---

or shares in a joint-stock company; or horses and trucks.''

Both words are very comprehensive. It is impossible to give a definition of either which would be a proper test under all conditions. The meaning of the terms must be gathered from the context and subject. *In re The Conqueror,* 166 U. S., 114, 17 Sup. Ct., 510, 41 L. Ed., 940; *Boston & Glouchester Steamboat Co.* v. *Commonwealth,* 195 Mass., 385, 81 N. E., 286, 11 Ann. Cas., 678; *In re Watson,* 17 S. D., 486, 97 N. W. 463, 2 Ann. Cas., 321; *Gibbs* v. *Usher,* 10 Fed. Cas.. 303.

The portion of the account for making notes of court proceedings is manifestly neither goods nor merchandise but a debt for services. Furthermore we do not think such transcripts are included in these terms.

Transcripts of court proceedings have no intrinsic value; they have no market value; they are not, generally, articles of barter or trade; they are not, ordinarily, valuable to anybody, except persons who have a special interest in the lawsuits of which they are records. They are written information of transactions which have taken place in court, and are valuable only as permanent records of the facts which they record.

The petition for *certiorari* is denied.