Nichols, North, Buse Co. v. Belgium Cannery, 188 Wis. 115.

<hr>

NICHOLS, NORTH, BUSE COMPANY, Appellant, vs. BELGIUM CANNERY, Garnishee, Respondent.

*October 20—November 17, 1925.*

*Bulk Sales Law: Construction: Sale of season's pack by pea canner.*

1. The Bulk Sales Law (secs. 2317c to 2317f, Stats.), designed to prevent fraudulent sales by merchants of their entire stock of merchandise, is penal in its character, in derogation of the common law, and should be strictly construed.   p. 118.
2. Such law, providing in sec. 2317c that the sale, transfer, or assignment, otherwise than in the ordinary course of business, of any part, or the whole, of any stock of goods, wares, and merchandise, shall be conclusively presumed fraudulent, was aimed at "merchants" as the word is ordinarily used, rather than at those dealing in any way in property that might come

within the term "merchandise;" and in this limited sense does not apply to the sale or pledge by a canning company, operating but a few days in each year, of the whole or of a substantial part of its pack for the oncoming packing season. p. 120.

APPEAL from a judgment of the circuit court for Milwaukee county: OTTO H. BREIDENBACH, Circuit Judge. *Affirmed.*

The plaintiff. corporation, a broker in peas, had a claim for $833.78 due before June 17, 1922, thereafter reduced to judgment, against the principal defendant, Green County Canneries, a corporation.

The plaintiff's manager made sales for the principal defendant in the pea-canning seasons of 1920 and 1921, and was in 1922 one of its directors. The prior sales were mostly in carload lots of 1,000 cases, each case with two dozen cans.

Several of the officers and directors of the Green County Canneries were also officers and directors of the garnishee defendant, *Belgium Cannery,* both such companies being pea canneries.

June 15, 1922, the financial situation of the Green County Company was considered at a meeting of its directors at which plaintiff's manager was present. A resolution was then adopted without any objection and made a part of the records of the company, reciting, among other things, its financial difficulties in the obtaining of sufficient money to meet the current expenses during the coming canning season which commenced about July 1st. It recited that one L. L. Pierron, president of the Green County Canneries, present at the meeting but who did not vote on the matter, was also interested as an officer and stockholder of the *Belgium Company* and offered to cause the latter corporation to lend the Green County Company up to $10,000 to pay for the purchase of the necessary cans, the labor and other incidentals

for the 1922 pack, provided the Green County Company would, from time to time, sell and transfer, by proper bills of sale, such portions of that pack as might be necessary to pay such amounts. It also recited that if the peas were sold at a price over and above the agreed price of $1 per case the excess should be paid to the Green County Canneries.

Owing to the weather conditions the season was a failure and but 8,000 of the anticipated 16,000 cases were packed.

Pursuant to the above resolution two instruments were executed by the Green County Canneries in form of bills of sale, one of June 17th of 6,404 cases at $1 per case; one of July 7th of 5,713 cases, the price being left blank, but understood to be also at $1 per case, each such being recorded. On June 17th the advances were $6,404, and on July 7th an additional advance of $5,713 had been made.

The market price of peas during the season was between $2.20 and $5 per case. Four sales were made directly from the Green County plant and accounted to and for by the *Belgium Company,* and other sales were made by the *Belgium Company* itself, the last being on November 9, 1922. An accounting was made by the *Belgium Company* of all sales, and, after deducting certain charges which were specified and agreed to in the aforesaid resolution, a balance of $319.51 was found due the Green County Company, including some of the items of personal property taken over at the close of the season.

This garnishment proceeding was instituted November 27, 1922. On March 9, 1923, upon its petition, the Green County Company was adjudicated a bankrupt. Thereafter the $319.51 aforesaid was paid by the *Belgium Company* to the trustee in bankruptcy and his receipt taken of said sum as in full of all claims which such trustee might have against the *Belgium Company* by reason of its sale of the 1922 pack.

The trial court held that the Bulk Sales Law did not apply to the transaction and that the garnishee defendant was entitled to judgment dismissing the garnishee action upon the merits. From such judgment the plaintiff has appealed.

For the appellant there was a brief by *Stover & Stover* of Milwaukee, and oral argument by *Daniel G. Stover.*

For the respondent there was a brief by *Hoyt, Bender, McIntyre & Hoyt* of Milwaukee, and oral argument by *Ralph M. Hoyt.*

ESCHWEILER, J. It was conceded upon the trial that if the so-called Bulk Sales Law, secs. 2317c to 2317f, Stats. (now secs. 241.18 to 241.21), applied to the transactions of June 17th and July 7, 1922, then the conditions required in order to make a valid sale, such as the making of an inventory at cost price and notifying the then existing creditors of the Green County Company, were not present. The language of the statute so far as material is as follows:

"Section 2317c. The sale, transfer, or assignment, in bulk, otherwise than in the ordinary course of trade, and in the regular prosecution of the business of the seller, transferor or assignor, of any part, or the whole, of any stock of goods, wares and merchandise, or of the fixtures pertaining to the same, . . . shall be conclusively presumed to be fraudulent and void," etc.

We think it is clear that the transaction here involved, by which a canning company undertook to sell or pledge the whole or the substantial part of its pack for the then oncoming packing season, was not within the letter or the spirit of the Bulk Sales Law.

As was said in the opinion by Mr. Justice JONES in *Missos v. Spyros,* 182 Wis. 631, 197 N. W. 196, the statute is penal in its character, in derogation of the common law, should be strictly construed, and in purpose was designed to prevent fraudulent sales by merchants of their entire stock of merchandise.

The statutory language above quoted certainly does not expressly include such an enterprise or business as that of a pea cannery, with its entire producing season limited to but a few days in each year, and one so entirely different from that of the ordinary merchant, disposing of his goods, wares, and merchandise from day to day, and we fail to see any valid reason or ground for so stretching the language as to include such a business. The manifest difficulty, if not impossibility, in a situation such as was before the Green County Company of its complying with other requirements of the law, such as preparing an inventory and determining the cost price of its product, all then in the future and impossible of determination, is also an important consideration in determining this question.

Consideration is urged by appellant to the amended Bulk Sales Law of Illinois, the first having been held unconstitutional, and to the case of *Athon v. McAllister,* 205 Ill. App. 41, where it was held that the sale of the entire property of one engaged in a dray and transfer business and farming was within their act. The Illinois act, however, is broader than ours, contains the phrase not found here, "or other goods and chattels of the vendor's business," inserted after the phrase, common to both acts, "goods, wares, and merchandise," as is pointed out and discussed in the *Missos Case, supra,* at p. 635.

In Massachusetts the term "merchandise" used in their Bulk Sales Law has been given a very extensive meaning. In *Hart v. Brierley,* 189 Mass. 598, 76 N. E. 286, in a sale by a factory of biscuits and crackers put up for the wholesale market, such articles were considered as merchandise under their Bulk Sales Law, but under the testimony it was held that the sale there of the entire manufactured product was made in the ordinary course of business and therefore valid. Again in *Tupper v. Barrett,* 233 Mass. 565, 124 N. E. 427, the word "merchandise" as used in such statute was held to include the horses and carriages of one whose

principal business was trading, buying, and selling horses, and that the particular sale there questioned was not in the usual course of the business, and therefore voidable.

On the other hand, in *Everett P. Co. v. Smith Bros.* 40 Wash. 566, 82 Pac. 905, 2 L. R. A. N. s. 331, a statute like ours was held not to apply to the sale of a livery stable; and in *Spurr v. Travis,* 145 Mich. 721, 108 N. W. 1090, the discussion of such a statute assumed that it did not apply to farmers and manufacturers.

In view of the prior holdings of this court as to the nature and purpose of this statute, and having heretofore adopted and now again approving of the theory that it is a penal statute aimed more at a particular class, namely, the merchants as the term is ordinarily used, than at the wide and practically unlimited field of those who deal in any way in any sort of personal property that might come within the term "merchandise," we must decline to follow the views of the Illinois and Massachusetts courts as indicated above and continue to hold that our statute is limited to a much narrower field and does not cover such transactions as were here involved.

We are not unmindful in taking this position of the broad meaning sometimes given to the word "merchandise," as, for instance, in *Hanson v. Roter,* 64 Wis. 622, 625, 25 N. W. 530, involving a contract for the sale and delivery of a quantity of logs, where such logs were spoken of as an ordinary article of traffic, like lumber, or other "merchandise;" the latter case being cited as authority for the statement, "Logs to be got out are merchandise which is within the statute," found in *Crosby H. Co. v. Trester,* 90 Wis. 412 (63 N. W. 1057), at p. 413, a case involving the statute of frauds. In Massachusetts it has been held to be synonymous with tangible property which could be sold (*Tupper v. Barrett,* 233 Mass. 565, 568, 124 N. E. 427), and in *New England & S. S. Co. v. Comm.* 195 Mass. 385, 390, 81 N. E.

286, the word as used in a taxation statute was held to include steamships.

The conclusion we have reached makes it unnecessary to consider whether or not the transaction was or was not in the ordinary course of trade and in the regular prosecution of the business of the seller, or as to the possible effect the subsequent bankruptcy of the principal defendant had upon the rights of any particular creditor in garnishment.

*By the Court.*—Judgment affirmed.