PATMOS *v.* GRAND RAPIDS DAIRY CO.

1. FRAUDULENT CONVEYANCES—BULK SALES LAW IS REMEDIAL IN NATURE.

    The bulk sales law (2 Comp. Laws 1915, §§ 6346-6348), is remedial in its nature, was passed to protect creditors, and to prevent fraud.

2. SAME—PURPOSE OF BULK SALES LAW TO PREVENT FRAUD—CONSTRUCTION.

    The purpose of the bulk sales law being to prevent the purchase of a stock of merchandise from various persons on credit and the selling it out in bulk for the purpose of defrauding those who extended credit, it should be construed so as to cure the evil at which it was aimed.

3. SAME—"MERCHANDISE" AND "FIXTURES" DEFINED.

    The term "merchandise," as used in the bulk sales law, means such things as are usually bought and sold in trade by merchants; and the term "fixtures" means such chattels as merchants usually possess and annex to the premises occupied by them to enable them the better to store, handle, and display their goods and wares.

4. SAME—APPLICATION OF STATUTE—GARNISHMENT.

    A corporation organized to deal in and dispose of milk

---

On applicability of bulk sales law to manufacturers or packers, see annotation in 41 A. L. R. 1214.

and milk products, including milk, cream, butter, and cheese, is within the provisions of the .bulk sales law, so that the proceeds of a sale in violation of said law are subject to garnishment by a creditor.

Error to Kent; Brown (William B.), J.   Submitted April 5, 1928.   (Docket No. 49, Calendar No. 33,607.) Decided July 24, 1928.

Garnishment · proceedings by Cornelius Patmos against the Grand Rapids Dairy Company, principal, and the Grand Rapids Creamery Company, garnishee defendant.   Judgment for garnishee defendant. Plaintiff brings error.   Reversed and remanded.

*Fred P. Geib* (*Henry C. Hart,* of counsel), for appellant.

*Norris, McPherson, Harrington & Waer,* for appellee.

POTTER, J.   Plaintiff sued the Grand Rapids Dairy Company, a Michigan corporation, and recovered a judgment of $1,379.82, and costs.   Simultaneously with the commencement of this suit, he instituted garnishment proceedings against the Grand Rapids Creamery Company.   From a judgment for the garnishee defendant, plaintiff brings error.

The Grand Rapids Dairy Company, a co-operative association of milk producers in the vicinity of Grand Rapids, was organized to deal in and dispose of milk and milk products.   The association, at the time of sale, was taking in about 20,000 pounds of milk a day, which it pasteurized and sold the next day, ·it being peddled out or sold at its retail store.   In connection with its milk treating plant it handled milk, cream, and butter.   It had on hand approximately a car load of milk bottles, a quantity of milk cans, cream cans, its machinery used in pasteurizing milk, churns,

weighing scales, and vats, coolers, bottler, capper, binder, bottle washers, can washer, cream separators, cream pasteurizing plant, boxes, crates, milk bottle caps, and other property used in connection with its plant. In the office of the plant was a retail store. In the store was sold milk, cream, and butter. No collateral line of merchandise was carried. The association sometimes bought cheese when it did not manufacture it. Butter and cheese were sold at the store. In connection with the office there were a cash register, desks, chairs, typewriters, safe, bookkeeping machine, adding machines, a quantity of carbon paper, stationery, salesmen's books, and salt. It is the proceeds of the merchandise and fixtures that are here sought to be reached.

The Grand Rapids Dairy Company sold out to the Grand Rapids Creamery Company. No attempt was made to comply with the bulk sales law, and the question in this case is whether the plaintiff may reach by garnishment proceedings the proceeds of the sale of this personal property by reason of the company not having complied or attempted to comply with the bulk sales law. This law (sections 6346-6348, 2 Comp. Laws 1915) applies to

"the sale, transfer or assignment, in bulk, of any part or the whole of a stock of merchandise, or merchandise .and the fixtures pertaining to the conducting of said business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the business of the seller, transferror or assignor." * * *

The act applies to "corporations, associations, copartnerships and individuals." Section 6347, 2 Comp. Laws 1915.

This act has been held valid and has been frequently construed (*Spurr* v. *Travis,* 145 Mich. 721 [9 Ann. Cas. 250, 116 Am. St. Rep. 330]; *People, ex. rel. Hopkins,* v. *Reynick,* 241 Mich. 106). It is remedial· in

its nature' (*Hanna* v. *Hurley*, 162 Mich. 601) ; and was passed to protect creditors (*Spurr* v. *Travis, supra*) ; and to prevent fraud (*Humiston, Keeling & Co.* v. *Yore,* 181 Mich. 632).    Its purpose is to prevent the purchase of a stock of merchandise from various persons on credit and then selling it out in bulk for the purpose of defrauding the rights of the creditors who extended the credit.    *Gallup* v. *Rozier,* 172 N. C. 283 (90 S. E. 209).    It should be construed so as to cure the evil at which it was aimed, defrauding creditors by secret bulk sales.    27 C. J. p. 875.

The term "merchandise," as used in this statute, means such things as are usually bought and sold in trade by merchants.    *People's Savings Bank* v. *Van Allsburg,* 165 Mich. 524; *McPartin* v. *Clarkson,* 240 Mich. 390.    The term "fixtures" means such chattels as merchants usually possess and annex to the premises occupied by them to enable them the better to store, handle and display their goods and wares.    *Bowen* v. *Quigley,* 165 Mich. 337 (34 L. R. A. [N. S.] 218) ; *Hoja* v. *Motoc,* 235 Mich. 258; *McPartin* v. *Clarkson, supra.*

In *Tupper* v. *Barrett,* 233 Mass. 565 (124 N. E. 427), it is said:

"The word 'merchandise' is a word of large signification and has been held to be synonymous with tangible property which could be sold."      .

In *Nichols, North, Buse Co.* v. *Belgium Cannery,* 188 Wis. 115 (205 N. W. 804, 41 A. L. R. 1211), it is said:

"In Massachusetts the term 'merchandise' used in their bulk sales law has been given a very extensive meaning.    In *Hart* v. *Brierley,* 189 Mass. 598 (76 N. E. 286), in a sale by a factory of biscuits and crackers put up for the wholesale market, such articles were considered as merchandise under their bulk sales law, but under the testimony it was held that the sale there of the entire manufactured product was made in the or-

dinary course of business and therefore valid.  Again in *Tupper* v. *Barrett,* 233 Mass. 565 (124 N. E. 427), the word 'merchandise' as used in such statute was held to include the horses and carriages of one whose principal business was trading, buying, and selling horses, and that the particular sale there questioned was not in the usual course of the business, and therefore voidable.

"On the other hand, in *Everett Produce Co.* v. *Smith Bros.,* 40 Wash. 566 (82 Pac. 905, 2 L. R. A. [N. S.] 331, 5 Ann. Cas. 798, 111 Am. St. Rep. 979), a statute like ours was held not to apply to the sale of a livery stable."

In *Plass* v. *Morgan,* 36 Wash. 160 (78 Pac. 784), it is said:

"It is contended by the respondent that the law uses the special term 'stock of merchandise,' which, according to accepted English definitions, relates to the business of merchandising alone, and was clearly so intended by the legislature; that courts will not so construe the language of the statute as to make it include that which its plain and usual meaning will not import, or render its application absurd or ridiculous in its operation.  The learned counsel, however, does not strictly quote the language of the statute.  It does not use the special term 'stocks of merchandise,' but uses the term 'any stock of goods, wares or merchandise in bulk.'  The word 'any' is comprehensive and so is the word 'stock.'  There is no limit placed by the legislature on the meaning of the word 'stock.'  A stock of goods may mean, under the plain language of the statute, a great many different kinds of goods, different kinds of wares, or different kinds of merchandise.  It was the evident intent of the legislature to prevent the perpetration of fraud upon the creditors of people who are engaged in business, and, while there seems to be no authority submitted on this proposition, and none that we have been able to obtain, we do not see our way clear to exempt the defendant in this case from the liabilities imposed by this statute, or to deprive his creditors of the protection which it seems to guarantee to those who furnish goods to parties engaged in business."

In *Boise Association of Credit Men* v. *Ellis,* 26 Idaho, 438 (144 Pac. 6, L. R. A. 1915E, 917), it is said:

"Merchandise means something that is sold every day and is constantly going out of the store and being replaced by other goods."

The principal defendant's business had for its object buying and selling milk and milk products. It trafficked for gain in these articles. That a thing is bought and sold does not alone make it merchandise. *Morelock* v. *Hail,* 138 Tenn. 657 (200 S. W. 519); *In re Hudson River Electric Power Co.,* 173 Fed. 934; 2 Bouvier's Law Dictionary, title "Merchandise."

The term "merchandise" is usually applied to personal chattels only, and to those which are not required for food or immediate support. 40 C. J. p. 642.

What may be regarded as perishable food products, exempt from the operation of the bulk sales law, depends upon the circumstances of each particular case. Butter and cheese are no more perishable food products than fruits and vegetables. No one would contend the keeper of a fruit store was exempt from the operation of the bulk sales law. If defendant corporation owed creditors, why should it be permitted to sell its stock of merchandise and fixtures in bulk and defraud them? Clearly it should not. It bought and sold for daily profit milk and milk products. It merchandised these things. We think defendant corporation was within the terms of the bulk sales law.

Judgment is reversed and the case remanded for further action in accordance herewith, with costs to appellant.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, McDONALD, and SHARPE, JJ., concurred.