(No. 12527.—Judgment affirmed.)

HUGO ALBERT WESKALNIES, Plaintiff in Error, vs. JOHN
F. HESTERMAN, Sheriff, Defendant in Error.

*Opinion filed April 15, 1919—Rehearing denied June 5, 1919.*

1. SALES—*when Bulk Sales act of 1913 applies to sale of farm
implements.* The Bulk Sales act of 1913 applies where a vendor,
who is engaged in farming and dairying on a rented farm, sells, in
bulk, to his son all of the live stock and the agricultural and other
implements used on the farm, and if no attempt was made to com-
ply with the Bulk Sales act the sale is void as to creditors.

2. DEBTOR AND CREDITOR—*when sheriff is not required to wait
ten days before levying execution.* A levy of execution is not void
because it is made less than ten days after execution is issued,
where the judgment debtor is notified of the execution and has
made a purported sale of the property to his son, who is about to
sell it at auction.

3. SAME—*levy of execution does not deprive debtor of right to
make schedule within ten days.* Levying an execution on personal
property before the expiration of ten days after the execution is
issued does not deprive the judgment debtor of his right to sched-
ule his property and claim his exemptions within the ten days.

4. PRACTICE—*right of defendant to make plaintiff his witness
on cross-examination rests in discretion of court.* In an action of
replevin, where the plaintiff testifies in his own behalf, the right
of the defendant to make the plaintiff his witness during cross-
examination and to examine him rests in the discretion of the court.

WRIT OF ERROR to the Appellate Court for the Second
District;—heard in that court on appeal from the Circuit
Court of DuPage county; the Hon. MAZZINI SLUSSER,
Judge, presiding.

BUNGE & HARBOUR, for plaintiff in error.

JOSEPH A. REUSS, WILLIAM R. FRIEDRICH, and MIG-
HELL, GUNSUL & ALLEN, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

The Appellate Court for the Second District affirmed a
judgment of the circuit court of DuPage county for de-
fendant in an action of replevin. On the petition of plain-

tiff this court granted a writ of *certiorari,* and the record is brought here for review.

The undisputed facts are that the father of plaintiff in error, Albert Weskalnies, was engaged in the business of farming and dairying on a rented farm of 165 acres in DuPage county. He raised grain, hogs and horses and kept fifteen milk cows. He shipped the milk daily to Chicago. His son, Hugo Albert Weskalnies, plaintiff in the replevin suit and plaintiff in error here, lived with his father and worked for him on the farm from January, 1916. Plaintiff was thirty-three years old. On November 18, 1916, the plaintiff's father executed a bill of sale to him for all the property on the farm except household furniture and 40 acres of corn in the shock, for the expressed consideration of $2873.50. The bill of sale purported to evidence a sale to plaintiff from his father of fifteen cows, one bull, one boar, one sow, seventeen shoats, six horses, three colts, and a large number of various kinds of agricultural and other implements used on the farm. It embraced all the live stock and farm machinery used on the farm. The bill of sale was recorded in the recorder's office the day it was dated. On December 14, 1916, William Ehrhart, a creditor of Albert Weskalnies, obtained a judgment against him in the circuit court of DuPage county for $890.50 and costs. Execution was issued and delivered to the defendant, as sheriff of DuPage county, the same day the judgment was rendered, and on the 21st of December he levied on the property as the property of Albert Weskalnies. Thereupon plaintiff, Hugo Albert Weskalnies, replevined it from the sheriff, claiming he had bought it from his father and that it belonged to him. He had advertised the property for sale at public auction the day it was levied upon. After much effort and labor the issues were finally joined and the cause heard by jury. It was stipulated during the trial that the only property involved in the suit was the live stock. At the conclusion of all the evidence the plaintiff's

counsel moved the court to instruct the jury to find the issues for the plaintiff and that the right of property in the live stock (describing it) and possession thereof were in him. The court denied the motion. Thereupon counsel for defendant moved the court to instruct the jury to find the right of property and right of possession of the live stock to be in defendant, describing in the motion fifteen cows, one bull, one boar, one sow, seventeen shoats, six horses and three colts. The motion was allowed, and the court instructed the jury to find the issues for the defendant and that the right to possession of the live stock (describing it) was in defendant. The jury returned a verdict finding "the ownership and right of possession" of the live stock (describing the same live stock in the same manner it was described in the instruction) were in defendant. Motion for new trial was overruled, and the court rendered judgment that defendant have and retain the property replevined by virtue of the writ and that he recover his costs.

No real effort appears to have been made by defendant to prove that no consideration was paid for the property by plaintiff. The only testimony we find in the abstract which has any bearing on that question is the testimony of plaintiff himself, who testified he was thirty-three years old, and that from 1906 to 1910 he had worked for his father on another farm for $300 per year. Whether he had been paid for his services is not shown. He worked for his father on the farm he was living on in 1916 from January to the time the bill of sale was made, but what, if anything, he was to be paid for his work is not shown. The circuit court and the Appellate Court held that the sale was fraudulent and void because it was made in violation of the act of 1913 called the Bulk Sales act, and plaintiff contends this was erroneous; that said act does not apply to one engaged in farming but applies only to those engaged in the business of selling merchandise, commodities and other wares; that the property sold by Albert Weskalnies was

the tools and instrumentalities used in conducting his farming operations and the Bulk Sales act does not apply in such case. No attempt was made by Albert Weskalnies to comply with the Bulk Sales act, and if the act applied to him, then the sale of the property to plaintiff was fraudulent and void as to creditors. The first Bulk Sales act in this State was passed by the legislature in 1905. (Laws of 1905, p. 284.) That act was expressly limited in its application to the sale of stocks of merchandise, and in *Off & Co.* v. *Morehead,* 235 Ill. 40, it was held unconstitutional. It was pointed out in that case that the act did not apply to farmers, hotel keepers, livery or transfer companies, publishers, mine owners and others mentioned, and the court held that there was no reason or qualification connected with a stock of merchandise, or persons dealing in the same, which authorized the legislature to mark it or them for special protective legislation from which all other classes of persons and property were excluded. In 1913 the legislature passed another Bulk Sales act. (Laws of 1913, p. 258.) That act declares fraudulent and void as against creditors "the sale, transfer or assignment in bulk of the major part or the whole of a stock of merchandise, or merchandise and fixtures or other goods and chattels of the vendor's business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the vendor's business," without compliance with the provisions of the act. Section 3 provides that the act shall include corporations, associations, co-partnerships and individuals who are parties to any sale of goods in bulk, but not to sales by executors, administrators, receivers, trustees in bankruptcy or by any public officer under judicial process, nor to the sales of exempt property, nor to sales made in the ordinary course of trade and in the regular and usual prosecution of the vendor's business, nor to sales made in good faith at public auction when notice is published in a newspaper of general circulation in the county where the

sale is made, ten days before the sale, or by posting notices in five public places ten days before the sale. That act was held valid in *Johnson Co.* v. *Beloosky*, 263 Ill. 363. The court said: "It must be assumed that the legislature, in passing the new act, had before it the decision of this court holding the former act unconstitutional because it was special class legislation, and that it was the intention of the General Assembly in passing the later act to obviate this objection by passing a general act applicable indiscriminately to the sale of any goods and chattels in the manner inhibited by section 1 of said act. Construing the new act as a general law which prohibits the sale of any goods and chattels in bulk, otherwise than in the ordinary course of trade in the regular and usual prosecution of business, the objection to which the former statute was open is obviated." It seems very clear from the history of the legislation and the language of the act that it was intended to, and does, apply to the sale of the property made by Albert Weskalnies to plaintiff. It was a sale in bulk of the major portion of the vendor's property, and was not made "in the ordinary course of trade and in the regular and usual prosecution of the vendor's business." There was no error in the holding of the circuit and Appellate Courts that the sale was fraudulent and void as to creditors.

Plaintiff also contends the levy of the execution on the property was void because it was made less than ten days after the execution was issued and received by the sheriff. It is conceded the judgment debtor was notified of the execution, although the printed notice to him was not signed by the sheriff. The point relied upon by plaintiff as rendering the levy void is that it was made seven days after the execution was issued, whereas the statute gives a judgment debtor desiring to avail himself of the benefits of the personal property exemption allowed him, ten days after notice of execution to make and deliver a schedule of his personal property to the officer having the execution. This

position of plaintiff is untenable. In the first place, the judgment debtor, so far as this record shows, never desired or intended to claim his exemptions out of the property in controversy. He denied it was his property, and, of course, he could not claim his exemptions out of the property without claiming to own it. He had made a purported sale of it to plaintiff, who claimed it as his and had published notice of his intention to sell the property at public auction the day the levy was made. Under the circumstances the sheriff was not required to await the expiration of the ten days before levying the execution when he knew the property would be sold and disposed of before that time. Further, the levying of the execution before the ten days expired would not operate to deprive the judgment debtor of the full period allowed by law to make and present his schedule. He would have a right to the ten days to make and present his schedule, and if levy was made before the expiration of that time he could present his schedule after levy and within the ten-day period. The levy before that time could not deprive him of the right to claim his exemptions if he desired to do so. Here the judgment debtor did not desire to claim his exemptions out of the property in controversy, because he claimed it was not his property. This was known to the sheriff, who also knew if the property was not levied upon the day the levy was made it would be sold and disposed of by plaintiff, who claimed it was his property. The levy was not void.

The verdict found "the ownership and right of possession" of fifteen cows, one bull, one boar, one sow, seventeen shoats, six horses and three colts were in defendant. The judgment was that the defendant "have and retain the property replevined" by virtue of the writ of replevin, and it is claimed the verdict and judgment are erroneous and require a reversal. The finding of the verdict that the ownership of the property described therein was in the defendant was wrong and should be treated as surplusage.

All defendant claimed was the right to the possession of the property by virtue of the levy of the execution upon it as the property of the judgment debtor. There is a stipulation between the parties in the record which from its language could only have been made after the verdict was returned. The stipulation recites the parties had agreed that the title to the property described in the replevin writ, except "that portion thereof which is included and recited in the verdict this day signed and returned by the jury in this suit," is in the plaintiff, and that no verdict of the jury or judgment of the court shall be necessary to vest title to such property in the plaintiff, and it was also agreed that there should be no action on the sheriff's bond on account of the title to said property being in the plaintiff, and it was further stipulated that the sole controversy was as to the right of possession of the live stock; that the right of possession of the other property taken in the replevin writ had been agreed to by the parties and was no longer involved in the controversy. In view of this agreement of the parties we cannot see how plaintiff can be prejudiced by the error in the verdict and judgment.

On the trial plaintiff testified as a witness in his own behalf. During his cross-examination the defendant was permitted by the court to make plaintiff his witness and examine him as such. This ruling of the court is complained of as reversible error. It was a matter resting in the sound discretion of the court. (*Wheeler & Wilson Manf. Co.* v. *Barrett,* 172 Ill. 610; *First Nat. Bank* v. *Lake Erie and Western Railroad Co.* 174 id. 36.) There was no abuse of discretion in the ruling of the court.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*