Missos, Appellant, vs. Spyros and another, Intervenors, Respondents.

*January 15—February 12, 1924.*

*Bulk Sales Law: Exemptions: Property conveyed: Fixtures: Property used to carry on the owner's business.*

1. The Bulk Sales Law, being penal in character and in derogation of the common law and of the right to alienate property without restriction, should be strictly construed.  p. 635.
2. Such law does not restrict the sale in bulk of articles used by the seller in carrying on his trade or business and which are necessary to enable him to enjoy the fruits of his own labor. p. 635.
3. Nor does such law affect the exemption laws or curtail their benefits.  p. 636.
4. The sale of a soft-drink and lunch parlor, only an insignificant portion of which consisted of goods, wares, and merchandise, which with the fixtures did not equal in value the owner's statutory exemptions, is not subject to the provisions of the Bulk Sales Law, and the property, which had been purchased by the defendants from the first buyer, could not be attached by a creditor of the original seller.  p. 636.

APPEAL from a judgment of the circuit court for Shawano county: EDGAR V. WERNER, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Andrews & Brunner* of Shawano, attorneys, and *Irving Breakstone* of Oconto, of counsel, and oral argument by *Mr. A. M. Andrews* and *Mr. Breakstone.*

For the respondents there was a brief by *Winter & Winter* of Shawano, and oral argument by *P. J. Winter.*

Jones, J.    Plaintiff brought action on a promissory note for $3,000 executed by defendants Marks and Pallas. Upon their failure to answer the complaint he instituted an attachment proceeding against certain property in the possession of the intervenors, *Spyros* and *Kapinos.*

Previous to March 12, 1921, plaintiff conducted an establishment known as the Princess Candy Kitchen. On that date he sold it to defendants Marks and Pallas, receiving as part of the purchase price their note for $3,000, payable eighteen months from date. At the time this action was commenced there was owing on this note $2,000 and interest.

On March 15, 1922, Marks bought the interest of his partner, Pallas, and thereafter operated the business alone. On June 16, 1922, Marks sold the business to the intervenors, *Spyros* and *Kapinos,* for $3,000. Of this amount $500 was paid for good will.

On June 8th Marks and *Spyros* made an inventory of the property to be sold, showing the quantity and the cost price to the seller. Prior to the consummation of the sale *Spyros* and *Kapinos* demanded and were given a list of the creditors to whom Marks owed money. At the time this list was sworn to by Marks it was incomplete. When the sale was consummated certain names had been added, but that of the plaintiff was not included or mentioned.

At the First National Bank, where the purchase price was paid, it was arranged that the bank should issue cashier's checks to each of the creditors whose name appeared on the list and that a sufficient amount to cover the checks should be deposited by the purchasers. At this time one Lueckenback, who held a chattel mortgage on the stock, threatened seizure unless his mortgage was satisfied. His claim was paid, the amount being $1,218.

The trial court found, in addition to the foregoing, "that of the property sold and attached, only an insignificant portion thereof consisted of goods, wares, and merchandise, amounting in all to $63;" that the business of the intervening defendants and Marks consisted in preparing soft drinks such as ice cream sodas and drinks of that nature requiring personal service in the preparation thereof, and in furnishing lunches; and that in that connection the other chattels were used, such as chairs, trays, cups, plates, saucers, etc., and a piano for the entertainment of guests; and that the fixtures pertaining to such goods, wares, and merchandise, added to the stock of merchandise, would not exceed the exemptions to which Marks would be entitled, and which would not be subject to attachment at the suit of the plaintiff.

Sec. 2317c, Stats., provides in part:

"The sale, transfer, or assignment, in bulk, otherwise than in the ordinary course of trade, and in the regular prosecution of the business of the seller, transferor or assignor, of any part, or the whole, of any stock of goods, wares and merchandise, or of the fixtures pertaining to the same, or of such goods, wares and merchandise and fixtures, including such sales, transfers and assignments made in consideration of an existing indebtedness, shall be conclusively presumed to be fraudulent and void as against the then existing creditors of the seller, transferor, or assignor, unless the seller, transferor, or assignor and the purchaser, transferee or assignee, shall, at least five days before the sale, transfer, or assignment, make a full and detailed inventory, showing the quantity, and, so far as possible, with the exercise of reasonable diligence, the cost price to the seller, transferor or assignor, of each article to be included in the sale, transfer or assignment; . . ."

Then follow provisions as to a written list of creditors and notice to be given them.

Sec. 2317f, Stats., provides:

"Any purchaser, transferee or assignee who shall not conform to the provisions of sections 2317c to 2317f, inclusive, shall become, and be held, liable and accountable to the

creditors of the seller, transferor or assignor, for all goods, wares and merchandise, and fixtures, coming into his possession or control by virtue of such sale, transfer or assignment; . . ."

Then follows a clause exempting from liability those who have complied with the statute.

The trial court found as conclusions of law that the intervenors had substantially complied with the provisions of sec. 2317c, and that the goods purchased by them were not subject to attachment by the plaintiff; that the plaintiff was not a creditor of Marks, but of Marks and Pallas; that Marks and Pallas sold the goods to Marks, and that Marks sold to the intervenors by a second sale, and that the statute does not render an innocent purchaser from the first buyer liable to creditors of the first seller, nor affect his title to the property; that as to every chattel sold by Marks to the intervenors, with the exception of the goods, wares, and merchandise amounting to $63, the said sec. 2317c does not apply; that the property purchased by the intervening defendants was incumbered by a chattel mortgage amounting to $1,218; that this was a valid lien; that the intervening defendants, by the payment of this mortgage, became entitled to be subrogated to all the rights of the holder of the mortgage; and that the intervenors were entitled to judgment dismissing the complaint.

Judgment was rendered vacating the attachment, and that defendants' property be released from the lien of the attachment, with costs to defendants.

Bulk-sale statutes have been enacted in many states and have given rise to much litigation. They were at first attacked as unconstitutional, and in a few states the objection was sustained. The subject was fully discussed in an opinion by Mr. Justice Eschweiler in *Gazett v. Iola Co-op. M. Co.* 164 Wis. 406, 160 N. W. 170, and our statute was upheld.

These statutes vary somewhat in different states as to the kind of property included. In some states the language used

is "stock of merchandise;" in others, "goods, wares and merchandise;" in others, as in this state, "goods, wares and merchandise, or of the fixtures pertaining to the same."

Since these statutes are penal in their character, in derogation of the common law and the right to alienate property without restriction, they should be strictly construed. 27 Corp. Jur. 875.

There is general concurrence in the view that the object of statutes of this character is to protect those who have given credit to merchants in the faith that their stocks of goods would be sold out gradually and replenished from time to time. Before the enactment of such statutes it was well known that merchants had frequently made sales of their entire stocks of merchandise, sometimes in good faith, sometimes fraudulently to the injury of general creditors. The statutes were designed to prevent this kind of transactions.

It is also the rule generally applied that the statutes were not intended to restrict the sale in bulk of articles used by the seller in carrying on his trade or business and which are necessary to enable him to enjoy the fruits of his own labor. Many cases are cited in 27 Corp. Jur. 881, illustrating this view; for example, articles carried for repair purposes, property belonging to a livery-stable business, articles used by bakers, coal dealers, and butchers in their business, furniture in a dancing hall, glassware used in a saloon, and pool tables and other articles kept for use in billiard rooms. Numerous other illustrations might be given in which it has been held that articles kept by the owner, not to be exposed for sale, but in carrying on his business, are not included in the restrictions contained in bulk-sales statutes.

In Illinois the statute is not limited to stocks of merchandise and fixtures, but includes "other goods and chattels of the vendor's business." Under this statute it was held that a bulk sale of live stock and agricultural implements by a farmer was void as to creditors for noncompli-

ance with the statute. *Weskalnies v. Hesterman,* 288 Ill. 199, 123 N. E. 314. This, however, is an unusual statute, and in most of the states no such restriction is placed on the sale of articles which are not bought and sold in the ordinary manner of dealing with merchandise.

In the case now before us, the chief source of revenue to defendants was the preparation of soft drinks and the furnishing of lunches to patrons. The articles in the inventory were those used in this business and in furnishing entertainment for customers. We do not overlook the fact that the word "fixtures" is used in the statute, but the trial judge found that the merchandise and fixtures in question did not equal in value the value of the exemptions to which the vendor was entitled, and we cannot say this finding was contrary to the preponderance of the testimony. There is nothing in the statute to indicate the intention to affect the exemption laws of the state or to curtail their benefits. *Saunders v. Graff,* 103 Kan. 261, 173 Pac. 413; *Rich v. C. Callahan Co.* 179 Ind. 509, 101 N. E. 810; *McCormick v. Kistler,* 175 Mich. 422, 141 N. W. 593; 12 Ruling Case Law, 528.

It was claimed by counsel for defendants that there was substantial compliance with the statute; that defendants were entitled to be subrogated to the rights of creditors to the amount of the chattel mortgage which they paid; and that since there was no fraud, if there was property subject to attachment and more than was necessary to liquidate the chattel mortgage, defendants were entitled to share *pro rata* with plaintiff for claims paid to other creditors, being subrogated to their rights.

In view of the finding of the trial court above mentioned, and our conclusion, it becomes unnecessary to discuss these questions. Nor is it necessary to discuss some of the other numerous questions of law which are argued in the briefs and which relate to the conclusions of law by the trial court.

*By the Court.*—Judgment affirmed.