## MAIN v. HALL.

### In re ROSE.

### No. 4271.

Circuit Court of Appeals, Seventh Circuit.

June 5, 1930.

William M. Acton, of Danville, Ill., for appellant.

Ivan A. Elliott, of Carmi, Ill., for appellee.

Before ALSCHULER, PAGE, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above).

The first question is whether the adjudication by the county court of right of property in Main is binding on the trustee. The proceeding there, under the appropriate statute therefor (Cahill's Rev. Stat. of Ill., 1923, c. 77, par. 68), was to test the right of property as between Main, the purchaser from Rose, and the judgment creditor holding under the levy of the execution. When bankruptcy intervened, the judgment, which had been rendered within four months, and under circumstances which avoided it as against the bankruptcy, was no longer effective to support the execution thereon. Title 11, c. 7, § 107, U.S.C. (11 USCA § 107). No attempt was made to bring the trustee in bankruptcy into the county court proceeding, and he was not bound by the adjudication there. He properly proceeded in the bankruptcy court, making Main a party, and, since the bankruptcy court had jurisdiction to pass on the question as between Main and the trustee, its order therein is unaffected by the determination of the county court.

Upon the merits, the trustee's contention is that the sale of these cattle to Main was in contravention of the Bulk Sales Act of Illinois[1] and therefore voided, and that no right or title passed to Main. If the act is applicable, concededly none of the things were done which it specifies as necessary in order to vest the purchaser with good title.

That the act is applicable to farmers has been adjudicated by Illinois courts. Weskalnies v. Hesterman, 288 Ill. 199, 123 N. E. 314, 4 A. L. R. 128; Athon v. McAllister, 205 Ill. App. 41. Was this sale of the cattle in the ordinary course of business of such a farmer, and particularly this one? It seems to us it was not. These were all the cattle which remained on this large farm. Many of them were not yet ready to be marketed, and there were included cattle which ordinarily would have been retained on the farm in order to carry on the stock-raising business in which Rose was mainly engaged. Also there were cows, some of which would have to be kept for milk. From this it is evident that in disposing in one lump sale

[1]Be it enacted, etc.: That the sale, transfer, or assignment in bulk of the major part or the whole of a stock of merchandise, or merchandise and fixtures or other goods and chattels of the vendor's business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the vendor's business shall be fraudulent and void as against the creditors of the said vendor, unless the said vendee shall, in good faith, at least five (5) days before the consummation of such sale, transfer or assignment demand and receive from the vendor a written statement under oath of the vendor or a duly authorized agent of the vendor having knowledge of the facts, containing a full, accurate and complete list of the creditors of the vendor, their addresses and the amounts owing to each as near as may be ascertained, and if there be no creditors, a written statement under oath to that effect; and unless the said vendee shall at least five days before taking possession of said goods and chattels and at least five days before the payment or delivery of the purchase price, or consideration of any evidence of indebtedness therefor, in good faith, deliver or cause to be delivered or send or cause to be sent personally or by registered letter properly stamped, directed and addressed, a notice in writing to each of the creditors of the vendor named in the said statement or of whom the said vendee shall have knowledge, of the proposed purchase by him of the said goods and chattels and of the price, terms and conditions of such sale: Provided, however, that it shall be lawful for the vendee to pay to the vendor so much of the purchase price as shall be in excess of the total amount of the indebtedness of the vendor, before the expiration of the five days hereinabove referred to. Cahill's Rev. Stat. of Ill. (1923) c. 121a, § 1.

of all these cattle it was not "in the ordinary course of trade" of a farmer, especially a stock farmer, and surely not "in the regular and usual prosecution of the vendor's business."

Appellant assigns two reasons wherefore the Bulk Sales Act was not transgressed: (a) That, at the time of the sale of the cattle, Rose had discontinued his business; (b) that the cattle sold to Main represented less than "the major part or whole of a stock of merchandise, or merchandise and fixtures, or other goods and chattels of the vendor's business," as specified in the act.

 It seems that Rose had arranged to discontinue farming and had leased his farm, evidently retaining possession until he had disposed of his property. But this intention on his part was not itself a cessation of business. The selling of his chattel property was manifestly an important part of the process of ceasing his business. If it were the law that upon determining to quit business he might then dispose of the property in bulk without compliance with the statute, it would practically nullify the statute. The evil at which the statute was directed is the disposition of property in bulk in fraud of creditors. The very act of disposing of the property in bulk would in most cases be the final act of ending the business, and, if this may be done free of the act, it might as well not have been enacted. It is evident that, notwithstanding Rose's determination to quit the business, it continued, if only for the purpose of disposing of the property which was employed therein. If in effecting this purpose he desires to dispose in bulk of the major portion of the property then remaining, the statute must be complied with in order to confer on the purchaser good title as against creditors.

Respecting proposition (b), it seems sufficiently clear that, at the time of the disposition of the cattle to Main, they constituted the major part of his stock in trade. It is perhaps doubtful whether this was so before he had sold off any of his property; but it does not appear that the sales from time to time previously made were in contravention of the Bulk Sales Act. They were not sales in bulk, and were not of the major part of the then goods and chattels of his business. But he may not evade the act by properly selling some of his property, and then dealing with all or a major part of what is left contrary to the provisions of the act, and thereby defraud his creditors. If the laudable purposes of the act could be thus

evaded, its practical usefulness would be slight indeed. We believe that, under the record facts, the Main sale was in violation of the act.

Surely, before Main ultimately paid for the cattle by giving his second check to the woman, he had become aware that this was indeed an extraordinary transaction, and, if carried through, would in all probability defraud Rose's creditors. The object of the Bulk Sales Act is to protect against transactions such as these.

Whether Main or the others knew of the Bulk Sales Act, or then had it in mind, is quite beside the question. It is a public statute, and its application does not depend upon knowledge of it. Main was abundantly warned to be careful in making the purchase before he finally parted with his money, and, while nothing appears to impugn his integrity and good faith, he took his chances, with resultant misfortune.

It is our view that the order of the District Court must be, and it is, affirmed.