[No. 22538. Department Two. March 16, 1931.]

ANNA GARNER, *Appellant,* v. J. R. THOMPSON, *Defendant,* IVER H. BRUDEVOLD, *Respondent.*[1]

*Noah Shakespeare* and *Louis A. Merrick,* for appellant.

*M. H. Forde,* for respondent.

MILLARD, J.—By conditional sale contract, executed February 4, 1926, Anna Garner, as vendor, sold to J. R. Thompson and Elmer Johnson, as vendees, ice boxes, tables, chairs, and other equipment for a restaurant and card room business. Johnson's interest in the property was, shortly thereafter, acquired by Thompson. No business other than a lunch room and restaurant was conducted by the partnership or by Thompson.

On January 28, 1929, Iver H. Brudevold purchased from Thompson a one-half interest in the restaurant

[1]Reported in 296 Pac. 1043.

and equipment thereof. The bill of sale by Thompson to Brudevold included Thompson's sworn statement, which purported to list all of Thompson's creditors—only two were listed, the name of Anna Garner being omitted—and the amount owing to each.

The new partnership of Thompson and Brudevold discarded some of the old fixtures, and installed new equipment in lieu thereof. The business was expanded by the addition of a card room and the entry of the firm in a modest way in the confectionery and cigar business. None of the equipment purchased by Thompson and Johnson from Anna Garner, except a cigar lighter and a tobacco cutter, was used in connection with the cigar and tobacco business.

On August 5, 1929, Brudevold purchased his partner's (Thompson) half interest in the business. The bill of sale from Thompson to Brudevold recites that the latter assumes and promises to pay "all bills against said partnership business, except the ice machine which the grantor assumes and agrees to pay the balance due thereon." All of the partnership obligations assumed by him under that bill of sale, were paid by Brudevold. It does not appear that he ever knew that Thompson or Johnson had purchased anything from Anna Garner, or that either of them was indebted to her in any amount. Thompson did not make a sworn statement listing the names of his or the firm's creditors, at the time he sold the remainder of his interest in the business to Brudevold.

On the date of the sale of Thompson's half interest to Brudevold, approximately $1,175 was due to Anna Garner. To enforce payment of that obligation, Anna Garner, who elected to treat the transaction as an absolute sale, commenced an action against J. R. Thompson and Elmer Johnson, vendees under the conditional sale contract. The trial of the action resulted in a judg-

ment in favor of the vendor and against Thompson, for the full amount claimed.

Thereafter, a proceeding in garnishment was instituted by Anna Garner against Brudevold, for collection of that judgment. From judgment dismissing the proceeding, the plaintiff has appealed.

Appellant contends that the sale by Thompson of his half interest to the respondent August 5, 1929, was fraudulent and void as to the appellant, as the respondent vendee did not obtain from his vendor (Thompson), as required by the bulk sales law (Rem. 1927 Sup., § 5832-1), a sworn statement listing the vendor's creditors.

Appellant cites as supporting authority *Plass v. Morgan* (decided in 1904), 36 Wash. 160, 78 Pac. 784, in which we held that the sale of any stock of goods, wares, or merchandise in bulk, "applied to a sale of all goods, wares, and merchandise of a person engaged in conducting a boarding house and restaurant." That and the other cases cited by appellant are not in point, as the section of the bulk sales act applicable thereto has since been amended. A "bulk sale" was then defined as follows:

"Any sale or transfer of a stock of goods, wares or merchandise, or all or substantially all, of the fixtures and equipment used in and about the business of the vendor, out of the usual or ordinary course of business or trade of the vendor, or whenever substantially the entire business or trade theretofore conducted by the vendor, shall be sold or conveyed or whenever an interest in or to the business or trade of the vendor is sold or conveyed, or attempted to be sold or conveyed, shall be deemed a sale and transfer in bulk in contemplation of this act: Provided, however, that if such vendor produces and delivers a written waiver of the provisions of this act from his creditors as shown by such verified statements then and in that case the pro-

visions of this section shall not apply." Laws of 1913, p. 610, § 4; Rem. Comp. Stat., § 5835.

Section 5835, as amended at the 1925 Special Session of the Legislature, reads as follows:

"Any sale, exchange or transfer, or attempted sale, exchange or transfer, of all or substantially all of any stock of goods, wares or merchandise, and/or all or substantially all of the fixtures and equipment used in and about the business of a vendor *engaged in the business of buying and selling and dealing in goods, wares or merchandise,* of any kind or description, made out of the usual course of business of the vendor, or the sale, exchange or transfer, or attempted sale, exchange or transfer of substantially the entire business of buying, selling and dealing in goods, wares or merchandise conducted by the vendor, or the sale, exchange or transfer, or attempted sale, exchange or transfer, of the interest of the vendor in any such business shall be deemed a sale and transfer in bulk, in contemplation of this act: Provided, that nothing contained in this act shall apply to sales or transfers of property by executors, administrators, receivers, or public officers, acting under judicial process." Laws of 1925, Ex. Ses., p. 338, § 1; Rem. 1927 Sup., § 5832-1. (Italics ours.)

Unless one conducting a restaurant is "engaged in the business of buying and selling and dealing in goods, wares or merchandise," the bulk sales act is not applicable to the facts in the case at bar.

In January, 1929, when a one-half interest in the restaurant business was purchased by respondent from Thompson, the respondent obtained, as required by the statute, a sworn statement from his vendor of the names of the vendor's creditors and the amount owing to each. Those creditors were paid. Our search of the record does not elicit any testimony that the respondent had any knowledge of Thompson's indebtedness to the appellant. At that time, Thompson was engaged solely in the restaurant business. He was not engaged in the confectionery or cigar business. He was in no

sense engaged in the business of buying and selling and dealing in goods, wares, or merchandise, and was clearly not within the bulk sales act. True, he purchased meat, vegetables, and other foodstuffs, and converted them into edible dishes, which he sold within the restaurant building, and he also prepared lunches, which were carried away and eaten elsewhere. That, however, does not transform the restaurant business into one of buying and selling and dealing in goods, wares or merchandise. In *Farmers' & Drovers' National Bank v. Hannaman,* 115 Kan. 370, 223 Pac. 478, the court said, in holding that a bulk sales act was not applicable to the goods and fixtures used in a restaurant:

"Do the provisions of the statute relate to and cover the restaurant business? We think not. While the restauranteur buys merchandise and resells same, ordinarily, it is not sold in the same form as when purchased. He buys foodstuffs and converts it into edible dishes which are sold. The statute covers only a stock of merchandise and fixtures pertaining thereto."

The recent decisions, which have apparently settled the question as to the applicability of the bulk sales statutes to restaurants, are reviewed as follows in note in 54 A. L. R. 1538, to the case of *McPartin v. Clarkson,* 240 Mich. 390, 215 N. W. 338.

"In *Carnaggio Bros. v. Greenwood* (1926) 142 Miss. 885, 108 South. 141, wherein it appeared that there had been a sale of restaurant fixtures and equipment, it was held that a restaurant was not a mercantile business within the meaning of the Bulk Sales Statute.

"So, a Bulk Sales Law has been held to be inapplicable to a transaction involving the sale of fixtures used in a restaurant and a small amount of cigars and tobacco held for sale therein. *Bolanovich v. Peter Hauptmann Tobacco Co.* (1924), 261 S. W. (Mo. App.) 723.

"The sale of restaurant fixtures, such as tables, chairs, counters, stoves, ice boxes, a soda fountain, etc., is not one within the contemplation of the Bulk Sales Law. *Gallup v. Rhodes,* (1921) 207 Mo. App. 692, 230 S. W. 664. See also *Fisk Rubber Co. v. Hinson Auto Co.* (1925) 168 Ark. 418, 270 S. W. 605; *Re Henningsen* (1923); D. C., 291 Fed. 684, affirmed in (1924; C. C. A. 2d) 297 Fed. 821.

"Bulk sales statutes are not intended generally to restrict the sale in bulk of articles used by the seller in carrying on his trade or business, and which are necessary to enable him to enjoy the fruits of his own labor. A sale involving the transfer of equipment used in a soft drink and lunch business is not within the statute. *Missos v. Spyros,* (1924) 182 Wis. 631, 197 N. W. 196.

"A keeper of a restaurant whose business it is to serve food and drink to the public is not engaged in the mercantile or merchandising business, nor is he a merchant within the meaning of the Bulk Sales Law. The fact that he keeps some merchandise which is useful in his business, including cigars and cold drinks, does not alter the character of his business. *D. C. Goff Co. v. First State Bank* (1927), 298 S. W. (Ark.) 884."

Clearly, then, the bulk sales act was not applicable when, in January, 1929, Thompson sold a half interest in the restaurant to the respondent. At that time, as stated above, Thompson was not engaged in the cigar and confectionery business. The ice boxes and other equipment purchased by the firm from appellant were used solely in the restaurant business.

The copartnership, Thompson and Brudevold, went into the cigar and confectionery business as a side-line of the restaurant business. It was, in effect, a new and different business, though connected with the restaurant. Appellant does not, nor could she successfully, claim that she was a creditor of that partnership in August, 1929, when Thompson retired from the

business and sold his remaining half interest to the respondent.

That being so, assuming the bulk sales law was applicable, the appellant has no cause for complaint because a list of the firm's creditors was not made by Thompson. The statute does not, in such case, require the listing of the individual creditors of the partners; only the partnership creditors should be listed. The names of those creditors were listed, and they were paid.

In *Whitehouse v. Nelson*, 43 Wash. 174, 86 Pac. 174, a copartnership sold its stock in trade without furnishing a sworn statement listing the creditors. We held that the sale was not fraudulent as to the holder of individual notes of one of the partners, made before the copartnership was formed, since the holder was not a creditor of such copartnership, and the sales-in-bulk act only required a list of the firm creditors. We said:

"As holder of such obligations, the appellant was not a creditor of the copartnership of Nelson and Edwardson, and the sale of the partnership property by that partnership was not a fraud on the appellant even though the sales-in-bulk act was not complied with. In other words, in the sale of partnership property the statutory affidavit need only contain the names, etc., of the firm creditors, and a sale of such property without complying with the statutory requirements is only void as to the firm creditors."

The judgment is affirmed.

MITCHELL, BEALS, MAIN, and FULLERTON, JJ., concur.