Nanno Tipsword, Appellee, v. T. W. Doss, Appellant.

Gen. No. 8,738.

2

Opinion filed October 13, 1933.
Rehearing denied January 4, 1934.

W. A. Doss, CARL I. GLASGOW, C. E. CORBETT and L. R. HERRICK, for appellant.

E. J. HAWBAKER, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

Appellant obtained a judgment by confession on August 17, 1932, in the circuit court of Piatt county for $3,941.32 and costs against James Byron and his sister, Anna Rimby, who resided on a farm leased by James Byron near Monticello, Illinois.

An execution was issued on said judgment and was served by the sheriff on August 18, 1932, and levied upon the property involved in this proceeding. On August 30, 1932, W. H. Conway, sheriff, caused a notice of sheriff's sale to be posted, advertising said sale to be held at 1:00 p. m. on September 9, 1932, and on that day sold the property levied upon.

On September 6, 1932, Nanno Tipsword, a daughter of Ann Rimby, caused a notice of claim of ownership to the property levied upon to be served upon said sheriff, requesting him to notify the judge of the county court of said county of her claim, and the county judge, upon receiving such notice, set said claim for hearing on September 12, 1932, at 9:00 o'clock a. m. Said cause was tried on September 16, 1932, and the jury returned a verdict in favor of appellee. A motion for new trial was overruled, and judgment rendered upon the verdict on September 27, 1932, finding that appellee was the owner of the property, and directing the sheriff to forthwith return the same to her, from which judgment appellant perfected this appeal.

On April 4, 1933, appellee made a motion praying that an order be entered affirming said judgment on the grounds that the abstract of record did not comply with the rules of this court, in that it did not contain an abstract of the reasons assigned and argued by appellant in her motion for a new trial.

The original bill of exceptions failed to include the motion for a new trial, that was made in the county court on September 19, 1932. Appellant procured an order from the county court amending the original bill of exceptions by including such motion for a new trial and a supplementary transcript of the record, containing said motion for new trial, and an abstract thereof was filed herein by leave of court on June 20, 1933; and, for this reason, the motion of appellee praying that the judgment of the lower court be affirmed is denied.

On December 28, 1932, appellee filed a motion accompanied by an affidavit in support thereof to dismiss this appeal, based upon two grounds, which motion was by order of the court taken with the case, the first ground urged for the dismissal of the appeal being that the order, entered September 27, 1932, found that Nanno Tipsword was the owner of said property and directed W. H. Conway, sheriff, to forthwith return the same to appellee, and that he had not perfected any appeal from said order.

When an execution is levied by a sheriff upon personal property, and the same is claimed by any person other than the defendant in the execution, upon such claimant giving notice in writing to the sheriff of his claim, it is the duty of such sheriff to notify the county judge of said claim, and it then becomes the duty of the county judge to cause the proceedings to be entered on the docket of the county court, and the claimant shall be made plaintiff in the proceedings before the county court and the plaintiff in the execution shall be made defendant.

This proceeding is a controversy between the plaintiff in the execution and the claimant of the property levied upon, and they are the real parties in interest; and the sheriff stands indifferent and ready to deliver the property to the claimant, if so ordered, or to proceed to sell the property levied upon should the claimant fail to establish his claim.

The sheriff was not a necessary party to the proceeding, and for that reason was not required to appeal from the judgment of the county court.

The other ground upon which the motion to dismiss is based is that the sheriff sold all of the property involved in this proceeding except certain items, returned by him to the claimant on the order of appellant; and that no order this court can make, nor any order the trial court can make, can possibly affect the subject matter involved in the litigation; that the ap-

pellant, by her own acts, placed it out of the power of the county court or the Appellate Court to make any proper order in reference to the custody or disposition of the same.

On a trial of right of property the only question to be decided is whether the property belongs to the claimant. *Marshall v. Cunningham,* 13 Ill. 20. The fact that the property levied upon was sold by the sheriff, at the instance of the defendant in this proceeding, would in no way affect the issues to be determined by a trial of the cause. If the sale had been made and the proceeds applied towards the satisfaction of the execution, with the consent of the claimant, then there would be no question for the court to determine; but in this proceeding no action of the sheriff, in disposing of the property, could defeat the right of the claimant to have her claim of ownership determined by the court.

The property having been sold prior to the trial in the county court, if the claimant was right in her contention, then that court should have declined to have tried the case, and the judgment should be reversed and the cause remanded to the county court with directions to dismiss the same.

For the reasons given the motion of appellee to dismiss the appeal is denied.

On the trial of the cause appellee introduced in evidence a bill of sale, of date August 9, 1932, from Ann Rimby and James Byron to herself, by the terms of which said parties sold and delivered to appellee all of the chattel property owned by them and including their interest in the growing crops upon the farm upon which they resided.

Appellee testified that in 1929 she and her mother and her uncle, James Byron, made arrangements whereby she should be paid wages. It was agreed that she should be paid by the year, averaging $250; and that she had performed services in the house and on

the farm during the period of the four years that she lived there. A number of neighbors testified to having seen her working on the farm, and fixed the value of services such as she performed at from $20 to $35 per month. There is no dispute as to what services she performed, or as to what her services were fairly worth.

Appellee claims to be the owner of the property conveyed to her by the terms of the bill of sale, and testified that at that time there was the sum of $1,000 due her from her mother and uncle for services performed, and that it was agreed that the property was fairly worth $1,000, and that her mother and uncle had conveyed the property to her in consideration of the amount due her for services.

The evidence shows that after the bill of sale was executed an arrangement was made whereby James Byron was allowed to use the property until he got his corn harvested, and he used the property just as he had been doing.

Appellant introduced in evidence the execution upon which the sheriff made his levy upon the property in dispute. Her claim is that James Byron and Ann Rimby transferred in bulk to appellee all of their goods and chattels, and that they were used in carrying on the business of farming in which the said James Byron was engaged on the farm upon which said parties resided, and that she was a creditor of said James Byron and Ann Rimby at the time the property was transferred to appellee, and that the provisions of the Bulk Sales Law, Cahill's St. ch. 121a, ¶ 1 *et seq.*, were not complied with; and that, therefore, said transfer was fraudulent as against her. She further charges that the bill of sale was made with the intention of hindering and delaying her in the collection of the indebtedness due her from James Byron and Ann Rimby, and that appellee permitted them to remain in possession of the property conveyed by the bill of sale, after

the execution and delivery of the same, to the same extent as far as the general public is concerned as existed for two years prior to August 9, 1932; and that appellant had no notice of the bill of sale until after the levy of the execution; and, because of such facts, such sale and transfer was fraudulent and void as to the creditors of the vendors.

The Bulk Sales Act of 1913, Cahill's St. ch. 121a, ¶ 1 et seq., only makes sales or transfers in bulk of the major part or the whole of the stock of merchandise, or other goods and chattels of vendors fraudulent as to those persons who were creditors at the time of the sale or transfer; and for this reason it was incumbent upon appellant to offer evidence to show that her judgment upon which execution issued was obtained upon indebtedness owing to her at the time such property was so transferred. Although there is no evidence in the record as to when the note upon which judgment was taken by confession was given or as to whether, at the time of the sale, appellant was a creditor of the vendors, yet that fact seems to be conceded by appellee and no complaint is made because of a failure on the part of appellant to make such proof.

It has been held that the Bulk Sales Act of 1913, Cahill's St. ch. 121a, ¶ 1 et seq., applied when a vendor who was engaged in farming and dairying on a rented farm sold in bulk all of his livestock and agricultural implements and where no attempt was made to comply with the provisions of the act, the sale was declared void as to creditors. ·Weskalnies v. Hesterman, 288 Ill. 199. It was, therefore, incumbent upon appellee not only to show that a sale and transfer of the property in question was made to her, but also as to any creditors of the vendors to prove that the provisions of the act, requiring the vendors to make a statement under oath, had been complied with, as the burden of

the proof was upon claimant to prove her right to the property. *Munson v. Commercial State Bank*, 246 Ill. App. 368; *National Cash Register Co. v. Clyde W. Riley Advertising System*, 329 Ill. 403.

Appellee says in her brief that there are only two issues presented by this appeal, the first of which has been disposed of by denying her motion to dismiss the appeal. The other issue is, Did the trial court err in holding that property bartered and exchanged from a debtor to a creditor for a debt, bona fide due and owing, could not then be levied upon and taken and sold by a judgment creditor without first establishing his right so to do by some form of action such as a creditor's bill, attachment or garnishment?

Appellee's position is that where it is claimed that a sale in bulk of vendors' property is fraudulent and void as against creditors, they should proceed by some appropriate form of action such as a creditor's bill, attachment or garnishment; and that such creditors cannot proceed by obtaining a judgment against vendors on their claim and then levy an execution and sell the property.

The trial of right of property, as provided by the statute, is merely another form of an action of replevin without formal pleadings. *Sellers v. Thomas*, 185 Ill. 384, 386.

When a judgment is obtained by a creditor and an execution is issued and levied upon the property sold in violation of the terms of the Bulk Sales Act, Cahill's St. ch. 121a, ¶ 1 *et seq.*, and some person other than the defendant in the execution claims the property and gives notice, and a trial of the right of property is resorted to, the question for decision is as to whether the property in question belongs to the claimant. If it is claimed that the Bulk Sales Act is violated by the sale in bulk of vendor's property, without complying with the terms of the act, and that the same is fraudu-

lent and void as to the creditor, and an action of replevin is resorted to, the same question is presented for determination; or if the judgment creditor proceeds by garnishment, then the question is as to whether the garnishee has any effects or estate of the defendant in his hands; and in each case, the same question as to whether the creditor has the right to satisfaction out of the property sold in violation of the terms of the Bulk Sales Act is decided. The action of garnishment is the usual procedure, as the same lies whether the purchaser has the goods in his possession at the time or has disposed of them.

In the case of *Weskalnies v. Hesterman, supra,* a bill of sale was made conveying all of the property of vendor to his son. A creditor obtained a judgment against the vendor and an execution was issued and levied on the property as the property of the vendor, the creditor claiming that the sale was void under the Bulk Sales Act. The son, instead of resorting to a trial of right of property, replevined the same; and the court held the sale fraudulent as to the creditors of vendor, and that the right of possession of the property was in the sheriff by virtue of the levy of the execution.

In the case of *Larson v. Judd,* 200 Ill. App. 420, a judgment by confession was obtained, an execution levied on the property sold by vendor, which was claimed to have been in violation of the Bulk Sales Act, and a trial of right of property had, just as in this case. No good reason can be given why a creditor cannot proceed by judgment and levy of an execution on the property claimed to have been sold and transferred in violation of the Bulk Sales Act, while said property is in the hands of vendee.

It is further claimed by appellee that the transaction was not a sale, but was a barter and exchange for a debt bona fide due and owing, and would not, in fact,

be called a sale but would be a payment of a debt. Section 1 of the Bulk Sales Act (Cahill's St. ch. 121a, ¶ 1) provides that a sale, transfer, or assignment in bulk of the major part or the whole of a stock of merchandise, or other goods and chattels of the vendor's business, otherwise than in the ordinary course of trade, shall be fraudulent and void against creditors unless vendee shall, at least five days before the sale, receive a complete list of the creditors of vendor and shall mail notice to them as therein provided.

In the case of *Talty v. Schoenholz*, 224 Ill. App. 158, the court in construing this section says: "A 'sale' is a transmutation of property from one man to another in consideration of some price or recompense of value. II Blackstone, 446. It is a transfer of the absolute or general property in a thing for a price in money. Benjamin, on Sales, sec. 1. A 'sale' is the passing of the title and the possession of any property for money which the buyer pays or promises to pay. *People v. Law and Order Club*, 203 Ill. 127. The word 'sale' had a well defined legal signification and, in the absence of anything to the contrary, it will be assumed that the word is intended to have its usual signification. *Siegel v. People*, 106 Ill. 89. A 'transfer' is defined by Bouvier as 'the act by which the owner of a thing delivers it to another person, with the intent of passing the rights which he has in it to the latter.' The same authority defines an 'assignment' as 'a transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of any estate or right therein.' The terms, 'sale,' 'transfer' and 'assignment' in the Bulk Sales Act are used in their well-known legal signification."

The purpose of the statute is to prevent a debtor from selling, transferring or assigning the major part or the whole of his stock of goods in bulk without giving his creditors notice of such intended sale; and it

does not make much difference what the consideration is, whether adequate or not, but it is the parting with the title by the vendor without the knowledge of the creditor that the statute makes fraudulent and void. Even though you term this transaction a barter and exchange for a debt bona fide due and owing, yet the legal effect was to transfer the title to the property to the vendee for a consideration, and as such would clearly come within the provisions of this statute.

Appellee tried her case on the theory that the provisions of the Bulk Sales Act did not apply, and the court, at her instance, gave the following instruction:

"You are instructed that if you find from a preponderance of all the evidence in this case that, on or about August 9, 1932, Ann Rimby and James Byron, for a valuable consideration and in good faith did sell, barter or exchange with Nanno Tipsword the goods and chattels described in the claimant's claim herein, the ordinary course of trade or dealing, or exchange same for amount due for work, labor, and services rendered to them, the said James Byron and Ann Rimby, by the same Nanno Tipsword, then in the event of the proof you should find for the claimant."

This instruction should not have been given for the reason that it directed a verdict for appellee without requiring the jury to consider whether the transaction was a violation of the Bulk Sales Act, or whether or not the bill of sale was made with the intention of hindering and delaying appellant in the collection of the indebtedness due her from James Byron and Ann Rimby.

Appellant filed a written motion for a new trial, specifying the points relied upon, and by so doing waived all points not specified in her said motion. *Yarber v. Chicago & A. Ry. Co.,* 235 Ill. 589, 603.

No point having been made by her that the court erred in giving to the jury appellee's instruction num-

ber four, the giving of the same cannot be assigned as error in the Appellate Court, and the judgment cannot be reversed on that ground.

Appellant insists that the court erroneously refused to give the following instruction:

"The Court further instructs the Jury on the above provision of the Statute that the same applies to the sale claimed to have been made in this case by James Byron and Ann Rimby to the Claimant, if you further believe by a preponderance of all the evidence that at the time, to-wit: on August 9th, 1932, that the said sale was made, that the property thereby sold constituted and was more than one-half of all the personal property that the said Ann Rimby and James Byron then and there owned and possessed.

"The Court further instructs the Jury that the Statute quoted herein entitled 'Sale of Chattels in Bulk,' governs the sales by persons engaged in farming, the same as persons engaged in mercantile business affairs."

No instruction was given setting forth the provisions of the Bulk Sales Act to which this instruction referred; it also assumed that a sale was made, while appellee contended that the transaction was not a sale, and it informed the jury that the Bulk Sales Act applied, if at the time the sale was made, the property sold constituted and was more than one-half of all the personal property owned by James Byron and Ann Rimby, although such sale would not be in violation of the act, unless it was also made "otherwise than in the ordinary course of trade and in the regular and usual prosecution of the vendor's business."

Whether there was a sale, and whether the property sold constituted the major part or the whole of the property owned by the vendors, and also whether the sale was made "otherwise than in the ordinary course of trade and in the regular and usual prosecution of

the vendor's business'' were questions to be determined by the jury after considering the evidence. It was not error to refuse this instruction.

The verdict of the jury being contrary to the law and the evidence in the case, the cause must be reversed and remanded and for that reason it is unnecessary to consider as to whether the transfer was made with the intention of hindering and delaying appellant in the collection of the indebtedness due her from the vendors of this property.

*Reversed and remanded.*