[No. 26347-1-I. Division One. July 29, 1991.]

KIMBERLY QUALITY CARE, *Appellant,* v. EASTERN
STAR NURSING HOME, *Respondent.*

*William Crowley* and *Siderius, Lonergan & Crowley,* for
appellant.

*Randy Barnard, Christine Maddox,* and *O'Shea,
Straight, Barnard & Martin,* for respondent.

BAKER, J. — Kimberly Quality Care appeals a summary
judgment dismissing its action against Eastern Star

Nursing Home for the collection of unpaid bills. It alleges that genuine issues of material fact exist as to: (1) whether U.C.C. Article 6 on Bulk Transfers applies to the sale of a nursing home; and (2) if Article 6 does apply, was the statute of limitations of that article tolled. Since we affirm the summary judgment on issue (1), we need not reach issue (2).

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant Kimberly Quality Care, a division of Lifetime Corporation (Kimberly), provided temporary nursing services to the Fountains Convalescent Center (the Fountains), a nursing home in Yakima. The Fountains was owned and operated by International Care Centers of Washington, Inc. (ICC). When the Fountains' account became overdue, Kimberly brought suit against ICC.[1]

Shortly thereafter, ICC entered into an agreement to sell the Fountains to respondent Eastern Star Nursing Home, a Washington nonprofit corporation (Eastern). The sale included all of ICC's rights, title and interest in all drugs, medicines, foods, linens or other supplies used in connection with the operation of the Fountains. The sales agreement provided that all liabilities, including accounts payable, would remain the responsibility of ICC. All services provided by Kimberly to the Fountains were provided prior to the closing date of the sale.

Kimberly then filed suit against Eastern for the debts incurred to it while the Fountains was owned by ICC. Eastern moved for a summary judgment of dismissal. In opposition to this motion, Kimberly filed the declarations of Darla Luckett, a certified nursing assistant at the Fountains, and Moe Chaudry, the administrator of the facility. Both declared that the Fountains purchased and maintained an inventory of personal and cosmetic items for sale to its patients. Based on these declarations, Kim-

---

[1]The record does not reveal the outcome of this lawsuit.

berly argued that the Fountains was engaged in the buy-
ing and selling of goods within the meaning of U.C.C.
Article 6 on Bulk Transfers (Article 6 or the Article).
Since Eastern did not comply with the creditor protection
provisions of Article 6, Kimberly contended, Eastern was
not shielded from liability to ICC's creditors. The court
granted Eastern's motion for summary judgment and dis-
missed the action, holding that Article 6 did not apply to
this transaction. This appeal followed.

ANALYSIS

We first note appellant's argument that the trial court
impermissibly weighed the sufficiency of the evidence on
summary judgment by finding insufficient evidence of
retail sales. The court's minute entry states: "nursing
homes, where retail sales activities are so few don't fall
under bulk sales law under UCC." Although the minute
entry is sparse, it does not indicate that the court found
the declarations of Luckett and Chaudry to be insufficient
evidence of retail sales, but rather that even crediting
those declarations, the level of retail sales described
therein was insufficient to create coverage under the bulk
sales law. Thus, the court's ruling appears to be a ruling
of law, not an impermissible weighing of the evidence.

The Washington version of U.C.C. Article 6 contains the
following pertinent definitions:

(1) A "bulk transfer" is any transfer in bulk and not in the
ordinary course of the transferor's business of a major part of
the materials, supplies, merchandise or other inventory
(RCW 62A.9-109) of an enterprise subject to this Article.

. . . .

(3) The enterprises subject to this Article are all those of a
vendor engaged in the business of buying and selling and
dealing in goods, wares or merchandise, of any kind or
description, or in the business of operating a restaurant, cafe,
beer parlor, tavern, hotel, club or gasoline service station.

RCW 62A.6-102(1), (3). Eastern does not dispute that the
sale of the Fountains included all of its materials, sup-
plies and other inventory, and therefore it would be a

"bulk transfer" within the meaning of subsection (1) if the Fountains is a covered enterprise under subsection (3).

■ No Washington case has addressed the question of whether a service enterprise that buys and sells goods incidental to its delivery of services is covered by Article 6. Respondent cites several cases from other jurisdictions holding that such enterprises are not covered. *H.P.S. Inc. v. Willis*, 483 So. 2d 767 (Fla. Dist. Ct. App.) (print shop), *review denied*, 492 So. 2d 1332 (Fla. 1986); *Allsbrook v. Azalea Radiator Serv., Inc.*, 316 S.E.2d 743 (Va. 1984) (radiator repair); *All Nite Garage, Inc. v. A.A.A. Towing, Inc.*, 85 Nev. 193, 452 P.2d 902 (1969) (towing service); *Film Mktg. Servs., Inc. v. Homer Photo Labs, Inc.*, 87 Montgomery Cy. L. 190, 5 U.C.C. Rep. Serv. 201 (Pa. C.P. 1966) (photo processing), *aff'd*, 425 Pa. 409, 229 A.2d 573 (1967). However, the state statutes at issue in each of these cases follow the official U.C.C. definition of a covered enterprise as one whose "principal business" is the sale of merchandise from stock. Washington has not adopted the official U.C.C. definition of a covered enterprise, but instead has retained its pre-U.C.C. definition, which does not contain the "principal business" restriction.[2] Therefore, the decisions of jurisdictions adopting the official U.C.C. text are of limited relevance, while Washington case law under the pre-U.C.C. bulk sales act remains authoritative on the question of what is a covered enterprise. *See* Washington State Bar Ass'n, *Commercial Law Deskbook* § 12.4(2), at 12-11 (1982).

---

[2]Although the main volume of RCW Title 62A (1966) indicates that Washington adopted the official U.C.C. definition of a covered enterprise in RCW 62A.6-102(3), that definition never came into effect. When the Legislature adopted the U.C.C. in 1965, it delayed the effective date until June 30, 1967, to give Washington citizens an opportunity to review and resolve problems in the U.C.C. Laws of 1965, 1st Ex. Sess., ch. 157, § 6 and Governor's explanation of partial veto, at 2593. In 1967, the Legislature amended Article 6 and essentially returned the definition of a covered enterprise to the pre-U.C.C. language, effective June 30, 1967. It appears that Washington is unique in not adopting the "principal business" language of the U.C.C. *See* state statutory variations in 7 R. Anderson, *Uniform Commercial Code* § 6-102 (3d ed. 1985 & Supp. 1990); Uniform Commercial Code § 6-102, 2A U.L.A. 288 (1977) (Supp. 1991).

■ Although no pre-U.C.C. Washington case addressed the exact question presented here, one case held that the bulk sales act applied only to mercantile businesses and thus did not apply to a manufacturing business. *Mill & Logging Supply Co. v. West Tenino Lumber Co.*, 44 Wn.2d 102, 109, 265 P.2d 807 (1954) (lumber mill). Another case, decided prior to the 1939 addition of "restaurants" and other establishments to the definition, held that restaurants were not covered. *Garner v. Thompson*, 161 Wash. 317, 321, 296 P. 1043 (1931). These decisions evince an understanding of the definition of a covered enterprise as restricted to *mercantile businesses*, except for those service businesses specifically listed in the second part of the definition. The legislative history of the bulk sales act also supports this understanding. *See Mill & Logging Supply Co.*, 44 Wn.2d at 108-09; Comment, *The Bulk Sales Law in Washington*, 35 Wash. L. Rev. 453, 458 (1960); *Commercial Law Deskbook, supra.* Since a nursing home is not a mercantile business,[3] it is not covered by Article 6.

■ The original purpose of the bulk sales act was to protect creditors of those enterprises to which unsecured credit is commonly extended on the faith of inventory. *See* RCW 62A.6-102(3), Washington Comments; Washington State Bar Ass'n, *Commercial Law Deskbook* § 12.2(1), at 12-8 (1982). Nothing in the present record indicates that the nursing home in question — the principal business of which is the delivery of nursing care to residents — is an enterprise to which unsecured credit is commonly extended on the faith of its inventory. Therefore, we find that the nursing home is not covered by Article 6 even though it does engage to some extent in the buying and selling of goods incidental to the delivery of its services.

---

[3]*Webster's Third New International Dictionary* 1412, 1413 (1986) defines "mercantile" in pertinent part as "of or relating to merchants or trading", and defines "merchant" in pertinent part as "a buyer and seller of commodities for profit" and "the operator of a retail business".

150

The Superior Court's order granting summary judgment of dismissal is affirmed.

WEBSTER, A.C.J., and FORREST, J., concur.